CITY OF PHILADELPHIA, CITY OF GLEN COVE, LANDFILL AND DEVELOPMENT COMPANY, MAC SANITARY LANDFILL, INC., KINSLEY'S LANDFILL, INC., AND DE LORENZO-INTERSTATE WASTE REMOVAL CO., INC. (NOW INTERSTATE WASTE REMOVAL CO., INC.), PLAINTIFFS-RESPONDENTS, v. STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY AND RICHARD J. SULLIVAN, COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued May 10, 1977—Decided June 20, 1977.

564

*Mr. Stephen Skillman,* Assistant Attorney General, argued the cause for appellants (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Skillman* of counsel and on the brief; *Mr. Peter Herzberg* and *Mr. Nathan M. Edelstein,* Deputy Attorneys General, on the brief).

*Mr. Herbert F. Moore* argued the cause for respondents (*Messrs. Jamieson, McCardell, Moore, Peskin and Spicer,* attorneys; *Mr. Moore* of counsel; *Mr. Arthur Meisel,* on the brief).

The opinion of the court was delivered by

MOUNTAIN, J. On November 18, 1975, this court rendered its decision in *Hackensack Meadowlands v. Municipal Landfill Authority,* 68 *N. J.* 451. The opinion upheld the constitutionality of *L.* 1973, *c.* 39, as supplemented by *L.* 1973, *c.* 363, known as the Waste Control Act, *N. J. S. A.* 13:1I–1 *et seq.* The principal purpose of this statute is to prohibit the disposal within New Jersey of waste originating out of state.

Plaintiffs appealed to the Supreme Court of the United States, where probable jurisdiction was noted April 5, 1976, 425 *U. S.* 910, 96 *S. Ct.* 1504, 47 *L. Ed.* 2d 760, *sub nom.*

*City of Philadelphia v. State of New Jersey.* During the course of oral argument before the Supreme Court on November 3, 1976, it was brought to the attention of that Court that twelve days prior thereto the President had signed into law the Resource Conservation and Recovery Act of 1976, *Pub. L.* 94–580, 42 *U. S. C. A.* § 6901, *et seq.* This statute expands the federal role with respect to the disposal of solid wastes. In compliance with an order dated November 15, 1976, the parties filed supplemental briefs in the Supreme Court addressed to the issue as to the effect this act might have upon the constitutionality of the New Jersey legislation. On February 23, 1977 the Supreme Court, with four justices dissenting, issued a *per curiam* opinion vacating the judgment of this Court entered November 18, 1975 and remanding the case for reconsideration in light of the foregoing Congressional enactment. *City of Philadelphia v. State of New Jersey,* 430 *U. S.* 141, 97 *S. Ct.* 987, 51 *L. Ed.* 2d 224. More specifically the opinion formulated the issue for determination on remand in these words,

We think it appropriate that we have the views of the New Jersey Supreme Court on the question whether or to what extent the Resource Conservation and Recovery Act of 1976 preempts the New Jersey statute.

[430 *U. S.* at 142, 97 *S. Ct.* at 988, 51 *L. Ed.* 2d at 226]

We have carefully examined the Congressional enactment as well as the materials bearing upon its history, and have had the benefit of briefs and argument of counsel addressed to the issue so presented. In our opinion, for the reasons set forth below, we believe the Congressional enactment does not effect federal pre-emption either as to the disposal of hazardous waste or with respect to any other area of solid waste disposal. In order that the basis for our conclusion may be fully comprehended we proceed to examine the two major subchapters of the federal act. Even though hazardous waste disposal is not clearly at issue in this case, we deem it appro-

priate to consider initially the subchapter of the Act which addresses that problem.

## I

Subchapter III of the act (42 *U. S. C. A.* §§ 6921–6931) is entitled, "Hazardous Waste Management." In this portion of the statute there is set forth a comprehensive program for the disposal of hazardous waste. The latter is defined as,

> . . . a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may —
> (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
> (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed. [42 *U. S. C. A.* § 6903(5)][1]

It seems clear that it would include nuclear waste.

The Administrator of the Environmental Protection Agency is directed to " . . . develop and promulgate criteria for identifying the characteristics of hazardous waste . . . taking into account toxicity, persistence, and degradability in nature, potential for accumulation in tissue, and other related factors such as flammability, corrosiveness, and other hazardous characteristics." 42 *U. S. C. A.* § 6921(a). Based upon such study, particular hazardous wastes are to be identified, the list to be revised from time to time as may be appropriate. *Id.*

The sections of the statute immediately following very carefully set forth detailed standards to be applied to (1) generators of hazardous waste (42 *U. S. C. A.* § 6922); (2)

---

[1] *N. J. S. A.* 13:1I–3(c) contains a definition of "solid waste" expansive enough to exclude from disposal in New Jersey "hazardous waste" as that term is defined in the federal act.

transporters of hazardous waste (42 *U. S. C. A.* § 6923); and (3) owners and operators of hazardous waste treatment, storage, and disposal facilities. (42 *U. S. C. A.* § 6924). This hazardous waste program is not an exclusively federal venture. Individual states are authorized to develop their own hazardous waste control and disposal programs subject to the approval of the Administrator. 42 *U. S. C. A.* § 6926 (b). Significantly, under a section entitled "Retention of State Authority," the states are prevented from imposing hazardous waste requirements less stringent than those authorized by the federal guidelines. (42 *U. S. C. A.* § 6929). If a state-enacted program deviates from the federal mandates the Administrator has the power to withdraw federal approval. (42 *U. S. C. A.* § 6926(e) ).

■ This Subchapter may fairly be characterized as an effort to achieve a degree of uniformity in hazardous waste control. The federal guidelines pertaining to parties involved in the generation, transportation and disposal of such waste establish a minimum national standard below which a state hazardous waste program may not operate. However, the Act does not prevent the State from imposing more stringent standards to hazardous waste operations within its borders. New Jersey has done just this through the enactment of *N. J. S. A.* 13:1I–1 *et seq.*

■■ We view this ban on disposal of waste originating out-of-state as entirely consistent with the federal program. That the federal hazardous waste guidelines and the New Jersey prohibition of out-of-state waste can function smoothly together is illustrated by using a hypothetical New Jersey hazardous waste disposal plant as an example. Once the federal regulations establishing performance standards are promulgated,[2] this plant will be required to comply with an-

---

[2] It should be noted that as of this date no federal regulations have been promulgated. It is clearly established that potential federal regulation of a subject matter by a federal agency does not preempt present regulation by the states. *Welch Co. v. New Hampshire,* 306 *U. S.* 79, 84–85, 59 *S. Ct.* 438, 83 *L. Ed.* 500, 504–505 (1939).

nounced guidelines pertaining to recordkeeping, reporting systems, plant design and training of personnel. (42 *U. S. C. A.* § 6924(1)–(7) ). The sole state restriction imposed upon the operation of the plant will be the ban on the receipt of hazardous waste which originated outside of New Jersey. *N. J. S. A.* 13:1I–10. It is readily apparent that both the federal and state regulations operate without conflict. The New Jersey plant will be in strict compliance with all federal requisites even though out-of-state wastes are prohibited.

 The critical inquiry relevant to federal pre-emption is "whether both [federal and state] regulations can be enforced without impairing the federal superintendence of the field . . ." *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 *U. S.* 132, 142, 83 *S. Ct.* 1210, 1217, 10 *L. Ed.* 2d 248, 256–57 (1963). Having concluded that "federal superintendence" of the field of hazardous waste is indeed unimpaired we perceive no federal pre-emption resulting from Subchapter III.

## II

Subchapter IV of the Congressional enactment (42 *U. S. C. A.* §§ 6941–6949) is entitled "State or Regional Solid Waste Plans." This portion of the Act deals with the treatment and disposal of *non-hazardous* solid wastes, materials that are or may become "environmentally sound," 42 *U. S. C. A.* § 6941, and that may either be reclaimed or disposed of with a minimum of danger to human life and health. It is with wastes of this sort that we are here directly concerned.

 As to the disposal of solid waste of a non-hazardous nature, it also seems clear that there has been no federal pre-emption by virtue of this statute. On the contrary, as will be seen, the Act affirmatively encourages state action and expressly eschews any intent on the part of Congress to do more than offer guidance together with technological and fiscal support.

■ It is well-settled today that pre-emption deriving from federal legislation must take the form of "an unambiguous Congressional mandate." *Florida Lime and Avocado Growers, Inc. v. Paul, supra,* 373 *U. S.* at 147, 83 *S. Ct.* at 1219, 10 *L. Ed.* 2d at 259 (1963). Where no such mandate is discernible, there will be no pre-emption. The Supreme Court appears to have been especially reluctant to find an intent to pre-empt where state legislation has been enacted to serve local environmental interests, *Askew v. American Waterways Operators,* 411 *U. S.* 325, 93 *S. Ct.* 1590, 36 *L. Ed.* 2d 280 (1973), or to protect public health. *Huron Portland Cement Co. v. Detroit,* 362 *U. S.* 440, 80 *S. Ct.* 813, 4 *L. Ed.* 2d 852 (1960). Our state statute, as was made clear in this Court's earlier opinion, 68 *N. J.* at 472–73, is an exercise of the police power of this State enacted in the interest of protecting the environment of New Jersey and the welfare of its citizens, *i.e.,* the public health.

The intent of Congress to leave this power with the several states, insofar as the disposal of non-hazardous waste is concerned, is clearly manifest. The report on these statutory provisions of the House Committee on Interstate and Foreign Commerce, *H. R. Rep.* No. 94–1491, 94th *Cong.* 2d Sess.; U. S. Code Cong. & Admin. News 1976, p. 6238, is explicit.

The Federal guidelines published pursuant to Title IV are not mandatory upon the states . . . .
[*Id.* at 5, U. S. Code Cong. & Admin. News 1976, p. 6242]
It is the Committee's intention that federal assistance should be an incentive for state and local authorities to act to solve the discarded materials problem. At this time federal preemption of this problem is undesirable, inefficient, and damaging to local initiative.
[*Id.* at 33, U. S. Code Cong. & Admin. News 1976, p. 6271]
[T]he provisions of this legislation, specifically do not authorize the federal government to take over the responsibility for discarded materials disposal planning.
[*Id;* U. S. Code Cong. & Admin. News 1976, p. 6271]

Senator Randolph, a co-sponsor of the bill, had this to say,

In developing this legislation, the members of the Committee on Public Works recognized that solid waste is a uniquely local prob-

lem and that programs in this area should be developed and managed at the local government level.

This is not an area which lends itself to extensive planning and operation from the Federal level. The role of the Federal Government in solid waste activities should be one primarily of providing financial and technical assistance. Guidelines authorized by this legislation are to be descriptive of the options available to local and regional bodies responsible for solid waste management. These guidelines should not be taken as directives from the Federal Government for a position by the local authorities.

Guidelines should provide the States and area planning agencies with maximum flexibility, while assuring that such agencies or organizations have adequate information to effectively implement the planning provisions.

To assure that the federal Government adopts a proper place in this program, I emphasize the Administrator of the Environmental Protection Agency is required to notify the Congress before the publication of guidelines, information or model codes, ordinances or statutes. The agency is restricted under the provisions of the bill from advocating specific policy alternatives at the State or local level. These matters are best left — and I emphasize this — to local choice since they involve substantial regional variations. It is not appropriate for the Environmental Protection Agency to become involved other than in the provision of technical assistance on request. [122 *Cong. Rec.* 11069 (1976)]

The statute itself (Subchapter IV) is a blueprint for state action to be accompanied by federal guidance and assistance. First there are set forth the objectives of Subchapter IV:

The objectives of this subchapter are to assist in developing and encouraging methods for the disposal of solid waste which are environmentally sound and which maximize the utilization of valuable resources and to encourage resource conservation. Such objectives are to be accomplished through Federal technical and financial assistance to States or regional authorities for comprehensive planning pursuant to Federal guidelines designed to foster cooperation among Federal, State, and local governments and private industry. [42 *U. S. C. A.* § 6941]

The Congressional plan for the attainment of these objectives follows. The federal Administrator of the Environmental Protection Agency is directed to "publish guidelines for the identification of those areas which have common solid waste management problems and are appropriate units for

planning regional solid waste management services." 42 *U. S. C. A.* § 6942(a). At a later date, probably some time in 1978, the administrator is to issue further guidelines, these "to assist in the development and implementation of State solid waste management plans." 42 *U. S. C. A.* § 6942(b).

The State plan is seen as the operational vehicle by and through which the statutory objectives are to be accomplished. Minimum requirements for federal approval of any such plan are set forth. 42 *U. S. C. A.* 6943. Disposal must be by sanitary landfill; open dumps are no longer to be permitted. 42 *U. S. C. A.* §§ 6944–45. Within an allotted span of time the Governor of each state, acting in concert with elected local officials and aided by the guidelines promulgated at the federal level, is to identify regions within the state as being appropriate areas within which to carry out programs of solid waste management and disposal. 42 *U. S. C. A.* 6946. Provision is made for interstate regions where this is suggested by the federal guidelines and approved by representatives of the respective states. *Id.* Upon approval of a State plan by the Administrator of the Environmental Protection Agency, the State becomes entitled to apply for and receive federal financial assistance. 42 *U. S. C. A.* 6947.

■ The position of the plaintiffs before this Court on remand from the Supreme Court is stated in their brief as follows:

> Plaintiffs do not urge that *P. L.* 1973, *c.* 363 has been preempted under the Commerce Clause. They do, however, submit that said statute must fall under the Supremacy Clause because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 *U. S.* 52, 67, 61 *S. Ct.* 399, 85 *L. Ed.* 581 (1940).
>
> [*Plaintiffs' Brief*, p. 4]

They argue further that if a region lying partially within each of two or more states is identified by the federal Administrator of Environmental Protection as an appropriate unit for planning regional solid waste management services

under 42 *U. S. C. A.* § 6942(a), then the respective Governors of the states in question are *required* by the federal statute to agree upon and fix the precise boundaries of the region and to develop a plan of solid waste disposal for the area so laid out. The argument concludes by asserting that the Governors and other involved state officials have no discretion in the matter, that Congress has mandated that the action be taken.

We have no hesitancy in rejecting this contention. The statute (Subchapter IV) cannot be so read. We need not address the underlying difficulties that such a construction would pose, since we are satisfied that as a matter of statutory construction, Congress intended to leave to each state the decision as to whether it will or will not accept recommendations set forth in federal guidelines and adopt, or not adopt, a State plan qualifying for federal approval. The only sanction deriving from the statute, in the event of noncompliance, is an ineligibility to receive federal funds and perhaps technological aid. As the House Report explains,

If those [statutory] objectives are not met, the states and local authorities within the states will lose the federal or technical assistance. However, the provisions of this legislation, specifically do not authorize the federal government to take over the responsibility for discarded materials disposal planning. [*House Report, supra,* at 33; U. S. Code Cong. & Admin. News 1976, p. 6271]

The Federal guidelines published pursuant to Title IV are not mandatory upon the states.

[*Id.* at 5; U. S. Code Cong. & Admin. News 1976, p. 6242]

■ Furthermore *L.* 1973, *c.* 363, forbidding the disposal within New Jersey of solid and liquid wastes originating elsewhere, is not presently in conflict with any federal proposal or guideline, since none has been made or promulgated. When federal guidelines as to proposed regions are in fact published, they may not even suggest or recommend that any part of New Jersey be joined with the City of Philadelphia in a common region. On the other hand, if such a suggestion or recommendation were to be made the Governor of

Pennsylvania or the Governor of New Jersey may fail to approve it. Finally, should such a proposal be made and approved by both states, this statute need not frustrate fulfillment of the proposal. The New Jersey Commissioner of Environmental Protection could simply exercise his statutory authority to decide that under such circumstances the introduction of out-of-state waste could be " . . . permitted without endangering the public health, safety and welfare . . ." *N. J. S. A.* 13 :1I–10.

In brief recapitulation, it is our conclusion that the Resource Conservation and Recovery Act of 1976 does not pre-empt the control and management of hazardous solid waste disposal. Parenthetically, we note again that this case is not directly concerned with the disposal of hazardous waste, nor do plaintiffs contend otherwise. It is our further conclusion that in no other field or area of waste disposal does the act effect any federal pre-emption. In fact it gives strong encouragement to the several states to take positive action on their own, supported by federal assistance and direction in the form of funds, technological aid and guidelines. We reject plaintiffs' argument based upon the Supremacy Clause, since we interpret Subchapter IV of the statute as offering incentives for desired action, but mandating nothing. The New Jersey statute is in conflict with no federal regulation or proposal, since none exists. Should federal guidelines be promulgated the statute presents no barrier against compliance nor to achieving effective interstate or regional cooperation.

After the remand from the Supreme Court of the United States, the Attorney-General filed a motion with this Court seeking, inter alia, the authority immediately to enforce *L.* 1973, *c.* 363. Originally, by order of December 11, 1975, we vacated a previous stay of judgment and authorized the immediate implementation of the statute in accordance with our decision of November 18, 1975. By order dated April 4, 1977, we reserved decision on the pending motion for a stay and directed that counsel address themselves to the issue so

presented at the same time the meritorious issue posed on remand was argued. This was done. Plaintiffs resist the Attorney-General's application, urging that the *status quo* be maintained pending their prospective application for further relief to the Supreme Court of the United States. The reasons which motivated us to deny plaintiffs' application for a stay of judgment following the rendition of our decision in November, 1975, are as compelling today as they were then. Additionally, we note that meanwhile a period of 18 months has elapsed.

The motion of the Attorney-General is granted to permit the prompt enforcement of *L.* 1973, *c.* 363 in accordance with our earlier decision, to take effect, however, only after the expiration of 30 days from the date of this opinion which we consider a reasonable period of time to afford plaintiffs full opportunity to apply to the Supreme Court of the United States for a stay of judgment, should they determine to do so.

In conclusion, we reaffirm the views expressed in our earlier opinion, reported in 68 *N. J.* 451 (1975), as well as the judgment there set forth, supplemented and modified by what is stated above.

*For reaffirmance as modified* — Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and HANDLER — 6.

*For reversal* — None.