STATE of Iowa, ex rel. IOWA DEPART-
MENT OF WATER, AIR AND
WASTE MANAGEMENT, Appellee,

v.

Donald GRELL, Appellant,

and

Rose Olson, Defendant.

No. 84–970.

Supreme Court of Iowa.

May 22, 1985.

Thomas T. Tarbox of Bennett, Wilke & Tarbox, Fort Dodge, for appellant.

Thomas J. Miller, Atty. Gen., and John P. Sarcone and Maureen McGuire, Asst. Attys. Gen., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and CARTER, JJ.

UHLENHOPP, Justice.

This appeal involves construction of a statute relating to solid waste disposal.

Defendant Donald Grell is the contract purchaser of a tract of land in Fort Dodge, Iowa, adjacent to Soldier Creek. He hauls materials from torn-down buildings to his property, dumps the material in piles, and reclaims the salvageable parts. The material consists of lumber, doors, windows, trees, concrete, steel, scrap iron, brick, paper, plaster, sandstone, dirt, lath, two-by-

fours, and similar substances. He covers up the unsalvageable material of the various kinds we have described. He has no permit for a landfill from the Iowa Department of Water, Air, and Waste Management. The executive director of the department ordered Grell to cease and desist dumping without a permit, but Grell persisted. *See* Iowa Code § 455B.307 (1983). The department has detailed regulations regarding landfills which accept construction and demolition waste, I.A.C. 900–103.4 (455B), as well as permit requirements. *Id.* 900–102.1 (455B).

The department brought the present action against Grell (and his contract seller of the land) asking for an injunction and punitive relief regarding illegal dumping. *See* Iowa Code § 455B.308. Following discovery, the department moved for summary judgment. The district court held a hearing and sustained the motion as to an injunction but reserved the penalty aspect for trial. The court did not find a violation by the contract seller. Grell appealed, and the parties made the appeal ready for submission.

I. In one division of its brief the department urges that the judgment appealed from is only partial and is therefore not "final"; hence the appeal should be dismissed. *See* Iowa R.App.P. 1(a).

■ The department is right that the district court's partial summary judgment is not final and that Grell has no "right" to appeal. Grell should have proceeded to trial and obtained judgment on the penalty aspect, or he should at least have sought permission from this court to take an interlocutory appeal. Iowa R.App.P. 2.

We have decided however to entertain the appeal under rule 1(c). We do so reluctantly as the course Grell has taken may well subject the parties to the trouble and expense of double appeals—one on liability and the other on the penalty. We do not look with favor upon a multiplicity of legal proceedings, but in this instance we overrule the department's request to dismiss the appeal.

II. We consider two issues on the merits of the appeal: whether the materials Grell dumps constitute "solid waste" under the statute, and whether Grell comes within an exception relating to the dumping of materials by an enterprise from its own "activities".

III. The department's authority to regulate the dumping of "solid waste" is bounded by the definition of these words by the General Assembly in section 455B.301(4) of the Iowa Code of 1983:

"Solid Waste" means garbage, refuse, rubbish, and other similar discarded solid or semisolid materials, including but not limited to such materials resulting from industrial, commercial, agricultural, and domestic activities. Solid waste may include vehicles, as defined by section 321.-1, subsection 1. Nothing herein shall be construed as prohibiting the use of dirt, stone, brick, or similar inorganic material for fill, landscaping, excavation or grading at places other than a sanitary disposal.

■ Grell testified that he hauls no garbage onto the premises; he seems to have the impression that solid waste means garbage. Section 455B.301(4) does include garbage, but it also includes "refuse, rubbish, and other similar discarded solid or semisolid materials. . . ." The department contends that demolition materials are "discarded solid or semisolid materials," and this contention may be accepted. The question, however, is whether demolition materials are "similar" to garbage, refuse, or rubbish. The department says yes. We give deference to a department's interpretation of its organic act, but we are the final arbiters of the meaning of the statute. *West Des Moines Education Ass'n v. PERB*, 266 N.W.2d 118, 124 (Iowa 1978).

In interpreting section 455B.301(4), we note that one of the words used by the General Assembly in the definition of solid waste is rubbish. Definitions of rubbish include "rejected matter," "trash". Trash is defined as "something worth little or nothing: junk, rubbish," and as "something in a crumbled or broken condition".

Webster's New Collegiate Dictionary (1973). We also note that the General Assembly evidently took a broad view of "garbage, refuse, rubbish, and other similar discarded solid or semisolid materials," as it provided that solid waste "may include vehicles". In addition it indicated a broad view of garbage, refuse, or rubbish in its express exclusion of "dirt, stone, brick, or similar inorganic material" when used "for fill, landscaping, excavation or grading. . . ."

We are not disposed to give a narrow or technical reading to this environmental statute, and hold that the department acted within its authority when it construed section 455B.301(4) to include demolition materials. We thus reject Grell's first contention.

IV. Section 455B.307(1) of the Code provides in pertinent part:

It shall be unlawful for any private agency or public agency to dump or deposit or permit the dumping or depositing of any solid waste at any place other than a sanitary disposal project approved by the executive director. *This section shall not prohibit a private agency from dumping or depositing solid waste resulting from its own residential, farming, manufacturing, mining or commercial activities on land owned or leased by it if the action does not violate any statute of this state or rules promulgated by the commission or local boards of health, or local ordinances.* The executive director may issue temporary permits for dumping or disposal of solid waste at disposal sites for which an application for a permit to operate a sanitary disposal project has been made and which have not met all of the requirements of part 1 of this division and the rules adopted by the commission if a compliance schedule has been submitted by the applicant specifying how and when the applicant will meet the requirements for an operational sanitary disposal project and the executive director determines the public interest will be best served by granting such temporary permit.

(Emphasis added.) Grell develops the ingenious argument that, if demolition materials are held to be solid waste, his "commercial activities" constitute the processing of demolition materials; that is the very function he performs on his land. Under the emphasized sentence in the statute, he therefore says he is not prohibited from dumping that solid waste on his own land.

The department counters that the emphasized language covers the solid waste produced by the manufacturing, mining, or commercial activity *itself*, such as scrap resulting from the manufacture of a product. The department asserts that the purpose of the landfill legislation would be undermined if the solid waste produced or existing at other sites could be gathered together and dumped at one unapproved place.

We think the department has the better of this argument, and again defer to its reading of the statute.

The trial court did not err in granting the injunction. We remand the case for proceedings relative to the penalty.

AFFIRMED AND REMANDED.