**STATE of Iowa, ex rel. IOWA DEPART-
MENT OF WATER, AIR AND
WASTE MANAGEMENT, Appellant,**

v.

**PRESTO–X COMPANY, Appellee.**

No. 86–960.

Supreme Court of Iowa.

Dec. 23, 1987.

Thomas J. Miller, Atty. Gen., and John P. Sarcone and Eliza Ovrom, Asst. Attys. Gen., for appellant.

Michael J. O'Bradovich, Council Bluffs, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO and NEUMAN, JJ.

McGIVERIN, Chief Justice.

The Iowa Department of Water, Air and Waste Management appeals the trial court's ruling on all three counts of the agency's petition charging defendant in a civil action with violating three portions of Iowa's hazardous waste management statutes contained in Iowa Code chapter 455B (1983 Supp.). Finding that the defendant had not operated a "facility" for handling hazardous waste as defined in the statute, the trial court disposed of the first and third counts of the agency's petition. The court also found that the defendant had not knowingly violated the statutory section listed in the second count of the agency's petition. We affirm on the first count and reverse and remand on the second two counts.

I. *Factual and procedural background.* Defendant Presto–X Company (Presto) owns and operates an exterminating and fumigating business in Des Moines. Presto was hired to fumigate a General Mills flour plant in Carlisle, Iowa, over the memorial day weekend in 1984. For the job, Presto selected a commercial fumigant known as Detia Gas EX–B Phosphine.

The active ingredient in the fumigant is aluminum phosphide which releases phosphine gas when exposed to heat and humidity. Exposure for an extended period of time at the proper temperature and humidity level will "react" all of the aluminum phosphide leaving behind aluminum hydroxide ash. Aluminum phosphide and phosphine are acutely toxic and are listed as hazardous wastes by the Iowa Department of Water, Air, and Waste Management (IDWAWM). *See* 900 Iowa Admin. Code 141.2 (incorporating 40 C.F.R. 261.-33(e)). Aluminum phosphide reacts violently with water because high concentrations of phosphine gas will spontaneously combust. Aluminum hydroxide ash is nonhazardous. All of this information was contained on the label accompanying the fumigant when Presto received it.

The fumigant is produced for use in "blankets" approximately 15 feet long, each containing 100 small bags or packets of aluminum phosphide. The bags are constructed of porous material to facilitate reaction with heat and humidity. Presto used 20 of these blankets to fumigate the flour plant. The Presto employee supervising this job, Ronald Salisbury, had used aluminum phosphide before, but never in blanket form. After exposing the blankets in the plant for 80 hours, Presto employees placed the fumigant blankets in plastic garbage bags. These bags were then placed in an enclosed camper in the pick-up truck of Ron Carruthers, another Presto employee.

As later events showed, all the aluminum phosphide in the fumigant apparently had not reacted to form an inert aluminum hydroxide ash before the materials were placed in the plastic bags. Thus, phosphine gas continued to be released but was trapped in the plastic bags.

While the bags were in the back of Carruthers' truck at Carruthers' residence that evening, the phosphine gas exploded, popping open the back door of the camper. Carruthers phoned Salisbury who instructed him to drive the truck to the Presto office. There, the two employees placed the blankets in fiberboard drums, taped the lids shut, and placed the drums in a far corner of the parking lot.

The next morning, Salisbury took the drums to the Metro East Sanitary Landfill in rural Polk County. The landfill operator would not accept the drums and phoned Paul Nelson at the IDWAWM. Unsure of the character of the waste, Nelson refused to let Salisbury dump the barrels at that time. Nelson took Salisbury's telephone number and stated that he would call Salisbury once he determined what should be done with the waste. Salisbury returned home and placed the barrels in his backyard. Nelson called shortly thereafter and explained that the fumigant could be considered a hazardous waste. He advised Salisbury to take precautionary measures to ensure that all the gas had evolved.

Later that morning one of the barrels in Salisbury's backyard exploded. Seeing smoke rising out of that barrel, Salisbury attempted to douse the fire by pouring water from his garden hose into the barrel. The water only worsened matters, causing further combustion. The fire department, summoned by a neighbor who heard the explosion, also failed to extinguish the fire with water. Eventually, the firemen and Salisbury buried the blankets in Salisbury's backyard.

Two days later, the United States Environmental Protection Agency (EPA) issued an emergency permit under the authority of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, to Presto for the storage and disposal of 1000 kilograms of the partially reacted phosphine fumigant.

The following day the IDWAWM issued an emergency administrative order to Presto. The order, finding that Presto had operated a facility for treatment and storage of a hazardous waste in violation of Iowa Code section 455B.415 (1983 Supp.), required defendant to cease treating the fumigant with water and allowed disposal at the Metro Estate Landfill after complete aeration.

Later, IDWAWM filed a petition as amended charging Presto with violating Iowa Code sections 455B.415(1) and 455B.417(1)(a) and (b). The trial court in a comprehensive opinion disagreed with IDWAWM's allegations and found that the agency had failed to carry its burden of proof under each code section. Treating these code sections in order, we affirm the trial court's conclusion as to section 455B.415(1), but reverse and remand as to the charges under sections 455B.417(1)(a) and (b).

■ II. *Violation of Iowa Code section 455B.415(1).* Sections 455B.411 through 455B.421 of the Iowa Code were enacted in 1979 in response to the Federal Resource Conservation and Recovery Act of 1976 (RCRA). *See* 42 U.S.C. section 6901, *et seq.* Under the RCRA, federal guidelines establish minimum hazardous waste control standards below which a state hazardous waste program may not operate, although a state may institute stricter standards. *City of Philadelphia v. State*, 376 A.2d 888, 73 N.J. 562, *rev'd. on other grounds*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 75 (1978). Section 455B.420 of the Iowa Code specifically states that sections 455B.411 through 455B.421 "shall be consistent with and shall not exceed" 42 U.S.C. sections 6921 through 6934. We construe Iowa Code sections in this case but turn to the United States Code where pertinent legislative history is helpful.

The relevant portion of section 455B.415(1) states:

> [A] person shall not construct or operate a facility for the treatment, storage or disposal of a hazardous waste identified under section 455B.412, subsection 2 unless the owner or operator has obtained a permit for the facility from the executive director.

The key to our construction of this section is the meaning of the word "facility." The definition adopted by IDWAWM comprises "all contiguous land, and structures, other appurtenances, and improvements on the land, used for treating, storing, or disposing of hazardous waste." Iowa Code § 455B.442(1)(a) (incorporating the federal definition contained in 40 C.F.R. 260.10). *See also* 900 Iowa Admin.Code 141.1. The agency asks us to construe chapter 455B broadly. It argues that a facility is any "physical location where hazardous waste is stored, treated or disposed of."

■ We have stated before that we shall not give a narrow or technical construction to this environmental statute. *State ex rel. Iowa Dept. of Water, Air and Waste Mgmt. v. Grell*, 368 N.W.2d 139, 141 (Iowa 1985). The agency's position, however, is too broad. We agree with the trial court's conclusion that the "mere presence of hazardous waste does not a facility make." As we construe Iowa Code chapter 455B, particularly in light of parallel federal statutory sections, "facility" refers to an area deliberately designated for handling hazardous waste where such waste is located on an on-going basis and does not include

any place where hazardous waste is fortuitously located on a single occasion.

■ In reaching this conclusion, we note first that section 455B.415(1) was amended in 1983 Iowa Acts chapter 136 section 7 to add the word "construct." "Construct" and "operate" in relation to a facility are words that connote a long-term arrangement. In the present situation, the hazardous material was never placed in an area designated for handling such materials on a long-term basis.

An additional consideration in this vein is the similarity between Iowa Code sections 455B.415(1) and 455B.417(1)(b). Section 455B.417(1)(b) states that a person shall not knowingly:

> Treat, store, or dispose of a hazardous waste identified under sections 455B.411 to 455B.421 either without having obtained a permit for the treatment, storage, or disposal under section 455B.415, subsection 1, or in violation of a material condition or requirement of a permit.

These two sections essentially prohibit the same behavior with the notable distinction that section 455B.415(1) refers to the use of a "facility" to store, treat or dispose of waste while section 455B.417(1)(b) does not. Construing "facility" to mean, as the agency contends, any place where hazardous waste is found, would render section 455B.417(1)(b) redundant. Because we construe statutes to give meaning to all sections, *Casteel v. Iowa Dept. of Transp.*, 395 N.W.2d 896, 898–99 (Iowa 1986), we find further reason to reject the agency's position.

A similar result was reached by the third circuit in *U.S. v. Johnson & Towers, Inc.*, 741 F.2d 662 (3d Cir.1984), when the court construed the parallel federal sections to Iowa Code sections 455B.415 and 455B.417, respectively 42 U.S.C. sections 6925 and 6928. The court construed those federal sections after reviewing the available federal legislative history. The court's language makes it clear that section 6925, the parallel of Iowa code section 455B.415, is aimed at controlling persons who own and operate facilities in a permanent sense, while section 6928, the parallel of Iowa

code section 455B.417, is aimed at those who impermissibly handle hazardous waste but do not operate a facility. The court stated:

> Although Congress' concern may have been directed primarily at owners and operators of generating facilities, since it imposed upon them in section 6925 the obligation to secure the necessary permit, Congress did not explicitly limit criminal liability for impermissible treatment, storage, or disposal to owners and operators. The House Committee's discussion of enforcement contains several references relevant only to owners and operators, but it says, in addition: "This section *also* provides for criminal penalties for the person who ... disposes of any hazardous waste without a permit under this title ..." H.R.Rep. No. 1491, *supra* at 31, 1976 U.S.Code Cong. & Ad. News at 6269 (emphasis added). The "also" demonstrates that the reach of section 6928(d)(2) is broader than that of the rest of the statute.

*Id.* at 667.

The penalty provisions under the RCRA include imprisonment in addition to sizeable fines. Iowa Code chapter 455B provides only civil penalties but the third circuit court's assessment of liability under the federal statute is equally applicable to chapter 455B. The federal sections when read together reach both the on-going contacts with hazardous waste in permanent facilities and the occasional contacts outside facilities the Congress intended to control when it enacted the "cradle-to-grave" regulatory scheme of the RCRA. *Id.* at 666 (quoting H.R.Rep. No. 1491, 94th Cong., 2d Sess. 11, *reprinted in* 1976 U.S. Code Cong. & Admin.News 6238, 6249). Hence, so must the Iowa Code sections. We believe that neither the Congress, when enacting 42 U.S.C. sections 6925 and 6928(d)(2), nor the Iowa legislature, when enacting the parallel provisions in chapter 455B, intended them to be duplicative.

Applying this construction to the case at hand, the facts undeniably show that Salisbury, in behalf of Presto, was not operating a facility in any on-going sense. He

stored the fumigant blankets overnight in the Presto parking lot as a temporary measure until the land fill was opened the next day. His attempts to deactivate the blankets, albeit poorly conceived, were stop-gap measures applied in the exigency of the moment. When confronted with the difficulties of deactivating the fumigant, he contacted the EPA for advice. In sum, the Presto employees' actions were the fortuitous results of bad planning, not the deliberate operations of a facility. We conclude in agreement with the trial court that defendant Presto did not operate a "facility" within the meaning of Iowa Code section 455B.415(1).

III. *Violation of Iowa Code section 455B.417(1)(a)*. The agency also charged Presto with violating both Iowa Code sections 455B.417(1)(a) and (b). Section 455B.417(1)(a) reads:

A person shall not knowingly do any of the following acts:

a. Transport a hazardous waste identified under the commission's rules to a hazardous waste storage treatment or disposal facility that is located in Iowa and that does not have a permit under section 455B.415, subsection 1.

The agency charged Presto with violating this section first by transporting the waste to Salisbury's home and second by later transporting the waste to the Metro East Landfill. The trial court found as a fact that the agency failed to prove Salisbury on behalf of defendant Presto "definitely knew" at the time that he was transporting the blankets between various locations that he was transporting a "hazardous waste".

Whether or not Salisbury knew the blankets constituted hazardous waste is irrelevant to the agency's first charge. As we explained in division II above, Salisbury's home is not a "facility" within the meaning of this statute. Salisbury, therefore, did not transport the waste to a "facility" when he took the fiberboard drums to his home.

Under the second charge, Salisbury did transport the waste to a facility.

Whether he "definitely knew" he was transporting hazardous waste, however,

was not the correct legal standard for the trial court to apply. The proper standard was outlined in *United States v. International Minerals & Chem. Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). The defendant in *International Minerals* was charged with shipping dangerous corrosive acids without listing them on its shipping papers as required by the federal regulations in 18 U.S.C. section 834. *Id.* at 559, 91 S.Ct. at 1699, 29 L.Ed.2d at 180. After noting that 18 U.S.C. section 834(f) punishes anyone who "knowingly violates any such regulation," the court held that knowledge of the specific applicable regulation was not an element of the offense because "knowingly" in the statute referred only to the defendants' knowledge that dangerous products were being shipped. *Id.* at 564–65, 91 S.Ct. at 1701, 29 L.Ed.2d at 182; *see United States v. Hayes Int'l Corp.*, 786 F.2d 1499, 1502 (11th Cir. 1986). Adding to the general maxim that ignorance of the law is no excuse, the court gave this explanation of the mens rea element in the statute:

But where, as here, ... dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation.

402 U.S. at 565, 91 S.Ct. at 1701–02, 29 L.Ed.2d at 183.

Given this standard, the question that the trial court should have answered was not whether Salisbury actually knew the substance he was transporting was a hazardous waste as defined in Iowa Code section 455B.411(4)(b) and listed by the environmental quality commission under section 455B.412(2), but whether Salisbury knew he was dealing with a dangerous substance. If he did, he is presumed to know the regulations placed upon such substances. Further, because this section is accompanied by civil penalties, the burden upon the agency to prove such knowledge on defendant's part is by a preponderance of the evidence.

We believe this standard is sensible in light of public safety concerns. Stringent public regulation is inevitable for substances or devices that can seriously threaten the community's health and safety. In addition to the regulations that control hazardous waste from cradle to grave, employers must now tell their employees and the community when hazardous chemicals are being used in the employer's business. Iowa Code ch. 455D (1985) (adopting by reference 29 C.F.R. § 1910.1200 (1983)); see Note, *Hazardous Chemicals—Right to Know in Iowa*, 36 Drake L.Rev. 419 (1986–87).

By adding "knowingly" to the statute, we believe the legislature intended to exclude truly innocent acts of transportation from punishment, but did not intend to forgive the failure to investigate applicable regulations. Put in different words, section 455B.417(1)(a) prohibits a person from transporting material that he or she knows, or through the exercise of reasonable care ought to know, is hazardous waste.

We reverse the trial court's decision on this count and remand for reconsideration of the facts under this standard. We note that if the trial court determines hazardous waste was knowingly transported under this standard, it must further ascertain whether Metro East Landfill was a permitted facility.

■ IV. *Violation of Iowa Code section 455B.417(1)(b).* Finally, we conclude that the trial court misconstrued section 455B.417(1)(b). Section 455B.417(1)(b) reads:

> A person shall not knowingly do any of the following acts:
>
> *  *  *  *  *  *
>
> b. Treat, store or dispose of a hazardous waste listed under sections 455B.411 to 455B.421 either without having obtained a permit for the treatment, storage, or disposal under section 455B.415, subsection 1, or in violation of a material condition or requirement of a permit.

This section requires the same "knowing" violation as section 455B.417(1)(a). Pursuant to our discussion of section 455B.417(1)(a) in division III above, the trial court on remand must also determine under section 455B.417(1)(b) whether Presto through its employees knew or should have known it was handling a hazardous waste.

In addition, as we have said, the prohibitions contained in sections 455B.415(1) and 455B.417(1)(b) overlap considerably. As evidenced by its legal conclusions, the trial court seems to have read the two sections to be identical with the exception of the "knowingly" requirement contained in section 455B.417(1). The trial court stated:

> The court has previously concluded that this defendant did not "treat," "store," or "dispose of" a hazardous waste without a permit in violation of section 455B.415(1).
>
> Having determined there was no violation of section 455B.415(1), the court sees no reason to determine whether one has done so "knowingly."

Although this is not an unreasonable construction in light of the convoluted language chosen by the statute's drafters, we conclude it is incorrect.

We reach this conclusion in agreement with the third circuit court of appeals reasoning in *U.S. v. Johnson & Towers, Inc.,* 741 F.2d 662 (3rd Cir.1984). The defendant in that case urged upon the third circuit the district court's limiting construction of 42 U.S.C. section 6928(d)(2)(A). The federal district court held that the phrase "without obtaining a permit under section 6925" limited liability to owners and operators. The equivalent language in Iowa Code section 455B.417(1)(b) reads "without having obtained a permit for the treatment, storage, or disposal under section 455B.415, subsection 1...." In rejecting this position, the third circuit court stated:

> It would undercut the purposes of the legislation to limit the class of potential defendants to owners and operators when others also bear responsibility for handling regulated materials. The phrase "without having obtained a permit *under section 6925*" [the parallel section to 455B.415(1)] merely references the section under which the permit is required and exempts from prosecution under section 6928(d)(2)(A) [the parallel section to 455B.417(1)(b)] anyone who

has obtained a permit; we conclude that it has no other limiting effect. Therefore we reject the district court's construction limiting the substantive criminal provision by confining "any person" in section 6928(d)(2)(A) to owners and operators of facilities that store, treat or dispose of hazardous waste, as an unduly narrow view of both the statutory language and the congressional intent.

*Id.* at 667 (emphasis in original).

We have already stated that these two sections are aimed at different classes of offenders. The legislature did not intend to make section 455B.417(1)(b) merely a restatement of section 455B.415(1) with an additional mens rea element. Additionally, if the reference in section 455B.417(1)(b) to the permit requirement of section 455B.415(1) were meant to limit the penalties for violating section 455B.417(1)(b) to owners and operators, individuals who did not own a treatment facility could dispose of hazardous waste without penalty. This construction would undermine the purpose of a statute aimed at regulating hazardous waste from cradle to grave. We conclude that the phrase in section 455B.417(1)(b) referring to the permit requirement of section 455B.415(1) only references the section under which permits are authorized.

V. *Disposition.* Accordingly, we affirm the trial court's ruling under section 455B.415(1). We reverse the court's rulings under subsections 455B.417(1)(a) and (b) and remand with instructions to redetermine whether the defendant violated those subsections under the considerations stated in divisions III and IV above.

The court shall make its redeterminations based on the existing record and any additional evidence allowed by the trial court in its discretion. The trial court shall enter appropriate further findings, conclusions and judgment in conformance with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.