STATE of Iowa ex rel. Thomas J. MILLER, Attorney General of Iowa, and Iowa Department of Natural Resources, Appellees,

v.

Austin J. DeCOSTER d/b/a DeCoster Farms of Iowa, Appellant.

No. 97–666.

Supreme Court of Iowa.

July 8, 1999.

William Sidney Smith, Michael P. Mallaney and Jan M. Mohrfeld of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney & Shindler, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and David R. Sheridan and Timothy D. Benton, Assistant Attorneys General, for appellees.

Considered by HARRIS, P.J., and CARTER, NEUMAN, TERNUS, and CADY, JJ.

HARRIS, Justice.

Austin J. DeCoster d/b/a DeCoster Farms of Iowa appeals a district court ruling finding him in violation of several water pollution and animal waste control requirements at hog confinement facilities. He also contests the imposition of $59,000 in civil fines. He claims the district court did not have substantial evidence to support its rulings, it interpreted the law incorrectly, abused its discretion in imposing the fines, and violated his equal protection rights in imposing the fines. We affirm.

DeCoster owned more than thirty hog confinement facilities in Iowa, only three of which are implicated here. The three are finishing unit numbers two and three in Wright County and finishing unit number nine in Hamilton County. Finishing units two and three used an earthen waste storage basin. Finishing unit nine has an

anaerobic lagoon. Each basin and lagoon was constructed pursuant to a permit issued by the department of natural resources. Most of DeCoster's facilities are leased to other producers, but DeCoster is responsible for management and disposal of manure. Two types of violations were alleged: improper spray irrigation; and violation of freeboard standards. The spray irrigation issue will be discussed in the following division. Discussion of the freeboard issue will be considered in a subsequent division. These matters were referred to the attorney general who holds statutory responsibility to initiate proceedings for pollution violations. Iowa Code § 455B.191(4) (1995). The attorney general brought this action to seek civil penalties and enjoin DeCoster from violating his permits, the administrative rules, and statutes. The district court declined to issue an injunction, but did impose various civil fines. The matter is before us on DeCoster's appeal challenging the fines.

■ I. The most hotly contested issue is the challenge to the district court's imposition of a $5000 fine on finding the spray irrigation incident violated statutes enacted to protect water quality. On April 27, 1995, DeCoster Farms began spray irrigating water and manure from the storage basin at its finishing unit number three site. The field slopes from south to north. The irrigation equipment used consisted of a pump at the lagoon, aluminum piping to the irrigation equipment, and a sprinkler and hose. After the sprinkler finishes its 180° arch application the equipment must be turned around in the opposite direction and the process completed. It takes an average of four to four and one-half hours for 900' feet of irrigation.

A DeCoster employee, Robert Polzin, was performing the application and completed the first 360° turn, called a "pull," while it was still daylight. During the evening Polzin stayed in his truck while irrigating and used a spotlight to ascertain if there were any problems. There were three large deep tiles underlying the DeCoster farm, all of which originated at unknown locations south of DeCoster's land and all of which were approximately three to four feet underground. Two of the three converged at some point on the DeCoster farm, so there were only two outlets. During the second "pull" that evening, Polzin noted that water and manure started to pool in the low spots. Irrigation continued until about 9 or 10 a.m. on April 28, 1995, when a mechanical problem disabled the machine during its fourth pull. A local person, Joe Haugen, found both tile outlets running a dirty darkish color, with a strong odor of hog manure. Both outfalls were identical in appearance, contained significant suspended solids, and created foam in the water in the ditch. The outfall continued at about the same intensity until the tile was cut. The two outlets discharge into a stream that, in another 743', joins the Iowa River.

Jeff Vansteenburg, a field agent for the department of natural resources (DNR), arrived on April 28 and drove with Polzin around a portion of the field, momentarily becoming stuck on the west side of the field that had just been irrigated. No standing water or ponding on the irrigated land was noted when Vansteenburg arrived. Vansteenburg concluded the source of the discharge in the tiles was a result of DeCoster farms' spray irrigation penetrating three feet of soil to reach the tile line. A DNR engineer, Ubbo Agena, testified the penetration of manure through three feet of soil would not produce outfall containing suspended solids or creating foam. He concluded there must have been holes or other direct access to the tiles. Also in the field was a breather pipe that went to one of the three tiles involved.

For openers, we affirm the trial court's finding that the polluted discharge from the tile outlets flowed from the spray irrigation. The trial court's finding on the point is easily supported by substantial evidence. Indeed the evidence is overwhelming that the discharge was uncom-

monly putrid and contained grossly excessive concentrations of hog manure. And the record establishes, to a near certainty, that the spray irrigation conducted by De-Coster on April 27 and April 28 caused the pollution.

■ It is the State's claim that DeCoster's actions rendered him subject to the civil punishment imposed under Iowa Code section 455B.191(1).[1] The State points particularly to Code section 455B.186(1).[2] Like the district court, we hold these provisions call for strict liability, and this holding renders some of the factual disputes irrelevant. Prohibitions involved in section 455B.186(1) are not grounded on fault. Matters of negligence and foreseeability are thus not at issue. Under plain reading, the statute is violated when, as here, the operator places the pollutant so that its introduction into the state's water results. Under any theory of this record, the pollutant at the tile outlets could only be traced to DeCoster's spray irrigation. No one else in the area was applying manure, and examination of the area revealed no other possible source of the pollutants at the outlets. So it was an obvious case of cause and effect. The spray irrigation caused the pollution. The State established, not merely by the required preponderance of evidence, but conclusively that DeCoster, through his agents, knowingly took the steps that introduced the waste pollutant onto the soil so that it was introduced into the waters of the state. It is thus not necessary for us to resolve whether the manure percolated through four feet of soil, as the trial court believed, into the tile or whether it entered the tile through a broken "breather" pipe, or even by way of macro pores left from roots of past crops as suggested by the State.

■ DeCoster contends the statute prohibits only direct introduction and argues that the spray irrigation was only indirect. We give environmental statutes a liberal—not narrow—construction. *First Iowa State Bank v. Iowa Dep't of Natural Resources*, 502 N.W.2d 164, 166 (Iowa 1993); *State ex rel. Iowa Dep't of Water, Air & Waste Management v. Presto-X Co.*, 417 N.W.2d 199, 201 (Iowa 1987). It would certainly violate this rule to give section 455B.186(1) the narrow construction De-Coster urges. The public would retain no environmental protection if waste could be dumped into Iowa waters by way of a short diversion through tile lines.

We reject DeCoster's challenge to the trial court's finding of a violation of Iowa Code section 455B.186(1) in the spray irrigation operation.

■ II. The trial court also found that the spray irrigation violated Iowa Administrative Code rule 567–65.2(7). That administrative rule provides:

All manure removed from an animal feeding operation or its manure control facilities shall be land-applied in a manner which will not cause surface or groundwater pollution. Application in accordance with the provisions of state law, and the rules and guidelines in this chapter, shall be deemed as compliance with this requirement.

DeCoster's argument, as we understand it, is that the rule is not violated until some

---

1. Iowa Code § 455B.191(1) provides:
   Any person who violates any provision of part 1 of division III of this chapter or any permit, rule, standard, or order issued under part 1 of division III of this chapter shall be subject to a civil penalty not to exceed five thousand dollars for each day of such violation.
   [Part 1 of division III of Iowa Code chapter 455B encompasses the general provisions of water quality control. They encompass Code sections 455B.171 through 455B.207.]

2. Iowa Code § 455B.186(1) provides:
   A pollutant shall not be disposed of by dumping, depositing, or discharging such pollutant into any water of the state, except that this section shall not be construed to prohibit the discharge of adequately treated sewage, industrial waste, or other waste pursuant to a permit issued by the director. A pollutant whether treated or untreated shall not be discharged into any state-owned natural or artificial lake.

pollution occurs and again he contends the State has failed to show actual pollution resulted from his irrigation on April 27. The State would have us reject resulting pollution as an element and asks us to hold a violation occurs upon showing that the land application was done in a "manner" that pollution normally would follow. We do not reach the point though, because we agree that DeCoster has failed in his factual claim that there was no pollution. The record shows that surface pollution—in the form of "pooling"—occurred on April 27, during the irrigation. This also contributed to the pollution in the tile outfall the following day.

■ Neither is there immunity for prohibited acts by way of DeCoster's permits for his operations from the department of natural resources. In *Bormann v. Kossuth County Board of Supervisors*, 584 N.W.2d 309, 321 (Iowa 1998), we pointed out that compliance with regulations by a hog confinement operator did not amount to a license to commandeer a neighbor's property right in an easement. In the present case we make the point that issuance of a permit for a hog operation by the department will not accord a hog confinement operator a license to otherwise violate statutes imposing environmental restrictions on hog operators.

The assignment is without merit.

III. The trial court found "freeboard" violations at finishing units two and three. The finding as to unit two is challenged on appeal. Finishing unit two is rented from DeCoster by Iowa Select.

Freeboard is the space between the top of the berm of the basin and the level of waste in the basin. DeCoster's permits issued by the department of natural resources required freeboard of two feet at finishing unit two. The two-foot requirement was violated when the waste overtopped the berm. DeCoster concedes the two-foot limitation was exceeded, but argues there was not substantial evidence that he was the proximate cause of the violation. He relies on the distinction be-

tween cause in fact and legal causation we explained in *Hagen v. Texaco Refining & Marketing, Inc.*, 526 N.W.2d 531, 537 (Iowa 1995).

■ Two showings are required to establish cause in fact: (1) proof that a defendant's conduct was a substantial factor in bringing about and producing the damages; and (2) proof that the damages would not have occurred but for the conduct. *Id.* DeCoster concedes the "but for" requirement but contests the "substantial factor" requirement because, he says, the violations were not foreseeable. This would be true if he had established his version of the facts. He loses the point though because the findings went against him in this factual dispute. The DeCoster employee, Polzin, denied being warned of the freeboard level, but Iowa Select's employee testified in detail of repeatedly warning Polzin of the deteriorating freeboard situation. The trial court believed the warnings had been issued to Polzin and we are bound by the finding.

■ In contrast with cause in fact, legal causation, "presents a question of whether the policy of the law will extend responsibility to those consequences which have in fact been produced." *Hagen*, 526 N.W.2d at 537. Legal causation will not be found if the defendant's conduct is superseded by later independent forces or conduct. *Id.* at 538. DeCoster argues that his actions were not the legal cause of the freeboard violation because of the existence of an intervening cause: the actions of Iowa Select in deliberately unplugging the lines. But this action did not qualify as a superseding cause because the harm was "within the scope of the risk" created by DeCoster's conduct in not removing the accumulating waste from the basin. *Id.* at 540 (quoting Restatement (Second) of Torts § 442B (1977)). Simply put, the harm caused by Iowa Select in unplugging the lines was the same harm that DeCoster risked.

The assignment is without merit.

IV. DeCoster also assails the civil penalties imposed. Review of the district court's assessment of civil penalties is for abuse of discretion. Deference is generally given to an agency's judgment unless the "penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." 2 Am.Jur.2d *Administrative Law* § 482, at 472 (1994). Matters committed to the discretion of a trial court are not reviewable upon appeal; only the alleged abuse of that power is reviewable. *State v. Frank,* 298 N.W.2d 324, 327 (Iowa 1980). We find no abuse in the fines, totaling $59,000, for the various violations.

DeCoster further argues that the penalties and referral of the case to the attorney general's office violated his equal protection rights, as his was the first case so referred and his fines were larger than previous violators. We review constitutional challenges de novo. *State v. Rains,* 574 N.W.2d 904, 912 (Iowa 1998). Because no fundamental right or suspect classification is asserted, DeCoster has the burden to show that the fines and referral each "clearly, palpably and without doubt infringes on the constitution; and every reasonable doubt will be resolved in favor of constitutionality." *McMahon v. Iowa Dep't of Transp.,* 522 N.W.2d 51, 56–57 (Iowa 1994). An equal protection analysis affords governmental bodies broad discretion in pursuing legitimate governmental interests. *Id.* at 56. It must be remembered that laxity in enforcement or some exercise of selective enforcement does not in itself establish a constitutional violation. *Greenawalt v. Zoning Bd. of Adjustment,* 345 N.W.2d 537, 546 (Iowa 1984).

We reject the equal protection argument because there was no evidence that similarly situated persons were treated differently.

V. Animals produce 1,037,000 tons of waste per year in the United States. *See* Minority Staff of the U.S. Senate Comm. on Agric., Nutrition & Forestry, 105th Cong., *Animal Waste Pollution in America: An Emerging National Problem* 11 (1997) (citing the Center for Agricultural and Rural Development, Iowa State University). Unlike waste produced by humans, there is no equivalent practice for treatment by wastewater treatment plants. Scott D. Laufenberg, *The Struggle of Cities to Implement the Safe Drinking Water Act in the Context of Intergovernmental Relations,* 3 Drake J. Agric. L. 495, 498 (Winter 1998). So the pollution control statutes and regulations implicated here are necessarily remedial.

Liberally construing the remedial nature of both Iowa Code section 455B.186(1) and Iowa Administrative Code rule 567–65.2(7), the district court was correct in its application of the law. There was more than a "scintilla" of evidence. *In re McIntyre,* 550 N.W.2d 457, 460 (Iowa 1996). Substantial evidence has been defined as evidence which would justify refusal to direct a verdict. *Grant v. Fritz,* 201 N.W.2d 188, 197 (Iowa 1972). DeCoster certainly could not have received a directed verdict, therefore the case should be and is affirmed.

**AFFIRMED.**