Shari G. McCLURE, Appellee,

v.

WALGREEN CO., Appellant,

Theresa D. Petersen, Defendant.

No. 98–1821.

Supreme Court of Iowa.

July 6, 2000.

Rehearing Denied Aug. 10, 2000.*

* McGiverin, C.J., and Snell and Ternus, JJ., not participating.

Kevin M. Reynolds and Richard J. Kirschman of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Michael H. Figenshaw of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, and Martin E. Spellman and Mark E. Spellman of Spellman, Spellman, Spellman, Spellman, Kealhofer & Spellman, Perry, for appellee.

LAVORATO, Justice.

Walgreen Co. appeals from a jury verdict and judgment for punitive damages because of injuries Shari McClure suffered resulting from a prescription misfill error at a Walgreen pharmacy. Shari cross-appeals from the district court's denial of her motion for new trial, or in the alternative, additur, regarding the amount of punitive damages. Walgreen contends there was not sufficient evidence to submit the issue of punitive damages to the jury. Walgreen also challenges an instruction the district court gave on punitive damages and several evidentiary rulings, one of which requires reversal and remand for new trial on punitive damages only. We affirm on all other issues Walgreen raises. The reversal renders moot Shari's cross-appeal, and we therefore do not address it.

## I. Background Facts and Proceedings.

In 1995, doctors diagnosed Shari McClure with pancreatic cancer. She underwent a surgical procedure in which doctors removed a substantial portion of her stomach, small intestine, and pancreas.

In 1997, Shari's cancer recurred. She underwent a second surgical procedure. Later, her doctors placed her on a fluorouracil chemotherapy and radiation regimen.

On July 27, 1997, Shari was hospitalized because of nausea and dehydration resulting from her chemotherapy and radiation treatments. Her condition quickly improved, and on July 31, 1997, Shari was released from the hospital.

After her release from the hospital, one of Shari's daughters, Deb McClure, went

to the Walgreen Pharmacy on Ingersoll Avenue in Des Moines to pick up three prescriptions for her mother: Diflucan, Kytril, and Pepcid. Diflucan is used to treat yeast infection caused by chemotherapy and radiation treatments. Kytril is an antinausea medication. Pepcid controls the production of stomach acid. Dr. Thomas Buroker, Shari's oncologist, prescribed Pepcid to protect her stomach from stomach acid and thereby decrease her nausea and increase her appetite.

When Deb brought the prescriptions in, the Walgreen pharmacy staff prepared a pill vial labeled "Pepcid, 20mg tablets ... 1 tablet by mouth twice daily." Rather than filling the pill vial with Shari's prescription for Pepcid, however, the Walgreen pharmacy staff erroneously gave Shari sixty 20mg tablets of Paroxetine Hydrochloride. Paxil, the brand name for this drug, is a selective serotonin reuptake inhibitor. The drug is used to treat obsessive-compulsive disorders, panic disorders, and depression. Even when taken in commonly recommended starting dosages of 10 milligrams per day, the drug can cause dizziness, confusion, achalasia (inability to sit still), nausea, and other mental status changes.

Shari took the 20mg tablets of Paxil approximately twice daily (as had been prescribed for the Pepcid) from July 31, 1997, to August 28, 1997. (The remaining pills in the bottle indicated she missed taking the drug twice daily on several occasions.) During this time, Shari exhibited increased irritability, weakness, confusion, and inattention to hygiene. On August 18, 1997, Dr. Buroker, unaware of the medication dispensing error, prescribed Zoloft, an antidepressant, to control Shari's behavior. On August 22, the doctor suspended use of Zoloft because Shari was exhibiting very low blood pressure.

On August 23, 1997, Shari had gotten up to go to the bathroom, became dizzy, and fell. As a result of the fall, she suffered fractures in her right leg and left foot. Medical testimony attributed the fall to the changes in her mental status and equilibrium brought on by her ingestion of Paxil.

Because of her injuries, Shari was admitted to Wesley Acres Retirement Home on August 26, 1997. One of Shari's daughters brought Shari's medications (including the Paxil) to the retirement home. The nurses at the retirement home continued to administer the Paxil pills to Shari until one of the nurses finally discovered the error on August 28, 1997. The retirement home immediately notified Shari's internist, Dr. John Yost, of the error. Dr. Yost ordered that Shari stop taking the Paxil medication immediately.

The retirement home also notified Shari's family of the error. Shari's daughter-in-law, Lynette McClure, notified Walgreen of the error. Walgreen's response was that an incident report had to be filed. At no time, however, did Walgreen discuss the side effects of Paxil with the family or warn of potential withdrawal problems associated with the abrupt discontinued use of the drug.

On September 9, 1997—the day Shari was to be released from the retirement home—she fell again because of dizziness. This time she suffered injuries to her head, back, and pelvis. Medical testimony attributed this fall to symptoms of a withdrawal syndrome associated with the abrupt discontinuance of Paxil.

On October 2, 1997, Shari sued Walgreen for compensatory damages and later added as a defendant, Theresa D. Petersen, the pharmacist on duty at the time the error was made. Shari alleged the two defendants were negligent and their negligence caused her fall and injuries. Later, Shari added a count for punitive damages against both defendants.

A jury returned a verdict for compensatory damages against both defendants in the amount of $100,000. The jury also returned a verdict of $150,000 against Walgreen alone for punitive damages. Walgreen paid the compensatory damage award and has appealed only from the

punitive damage award. Shari has cross-appealed.

On appeal, Walgreen contends there was insufficient evidence to submit punitive damages. Walgreen also challenges a punitive-damage instruction submitted to the jury and two evidentiary rulings. One of these evidentiary rulings concerns the admission of certain incident reports. The other concerns licensee disciplinary proceedings in connection with the incident.

In her cross-appeal, Shari contends the district court abused its discretion in denying her motion for new trial or in the alternative, her additur, regarding the amount of punitive damages.

## II. Issues.

### A. Punitive damages.

**1. Sufficiency of the evidence.** Walgreen contends here as it did in its motion for directed verdict that the evidence was insufficient to establish a willful and wanton disregard for the rights and safety of another. At best, Walgreen contends, the evidence supports nothing more than a simple mistake. Therefore, Walgreen concludes, the district court erred in submitting the punitive-damages issue to the jury. Not surprisingly, Shari argues there is overwhelming evidence supporting the submission of this issue to the jury.

■ We review a ruling denying a motion for directed verdict for correction of errors at law. Iowa R.App. P. 4; *see James ex rel. James v. Burlington Northern, Inc.*, 587 N.W.2d 462, 464 (Iowa 1998). When reviewing such rulings, we view the evidence in the same light as the district court to determine whether the evidence generated a jury question on the issue. *Heick v. Bacon*, 561 N.W.2d 45, 47 (Iowa 1997).

■ A directed verdict is not appropriate if the party against whom the motion is made has presented substantial evidence on each element of the claim. *Id.* Under this standard, the district court must sub-

mit the issue to the jury if reasonable minds could disagree on it in light of the evidence presented. *Id.* Even if certain facts are not in dispute, a jury question exists if reasonable minds might draw different inferences from those facts. Iowa R.App. P. 14(f)(17).

■ When ruling on a motion for directed verdict, the district court must view the evidence in the light most favorable to the party against whom the motion is made. Iowa R.App. P. 14(f)(2). A party moving for a directed verdict is considered to have admitted the truth of all evidence offered by the other party as well as every favorable inference that may fairly and reasonably be deduced from it. *Heick*, 561 N.W.2d at 47.

Iowa Code section 668A.1 (1997) sets the standard for awarding punitive damages:

> a. Whether, by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another.

We have defined "willful and wanton" in the context of this statute to mean that

> "[t]he actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences."

*Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990) (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 34, at 213 (5th ed.1984)).

■ Punitive damages serve "as a form of punishment and to deter others from conduct which is sufficiently egregious to call for the remedy." *Coster v. Crookham*, 468 N.W.2d 802, 810 (Iowa 1991). Mere negligent conduct is not sufficient to support a claim for punitive damages. *Beeman v. Manville Corp. Asbestos Disease Compensation Fund*, 496 N.W.2d

247, 256 (Iowa 1993). Such damages are appropriate only when actual or legal malice is shown. *Schultz v. Security Nat'l Bank*, 583 N.W.2d 886, 888 (Iowa 1998).

Actual malice is characterized by such factors as personal spite, hatred, or ill will. *Id.* Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights. *Id.*

■ We agree with Shari that the evidence in this case was not limited to "one innocent misfill." Petersen was the sole pharmacist on duty when Shari's prescription was misfilled during the busy noon hour on July 31, 1997. She admitted the need for extra technicians to help staff during the noon rush hour at the pharmacy.

Additionally, there were thirty-four incident reports in evidence. These reports indicated dispensing errors nearly identical to the dispensing error in this case: The incorrect medication begins with the same alphabetic character as the correct medication prescribed. The errors all occurred within a three-year period before the incident in question. Viewing this evidence in the light most favorable to Shari, we conclude the jury could reasonably infer that Walgreen had a serious problem in this regard, knew it had the problem, but did not take adequate steps to correct it.

What made Walgreen's conduct particularly egregious, however, was its failure to warn Shari or her doctors of the serious adverse side effects associated with Paxil and the abrupt discontinuance of the drug. Walgreen learned of the error twelve days before Shari's second fall. However, contrary to pharmacy standards and its own policy manual, Walgreen neglected to warn Shari or her family of such adverse side effects. *See Burke v. Bean*, 363 S.W.2d 366, 368 (Tex.Civ.App.1962) (holding that failure to warn plaintiff of error in filling her prescription was sufficient evidence of conscious indifference to plaintiff's rights to support an award for punitive damages).

Viewing the evidence in the light most favorable to Shari, we think the jury could reasonably have found that such a warning would have prevented the injury.

In the context of a products liability case, we considered analogous conduct to support an award of punitive damages:

> Viewing the evidence in the light most favorable to Lovick, we agree with the trial court that punitive damages were properly submitted to the jury. There was evidence Wil–Rich failed to institute a warning campaign for numerous years despite knowledge of numerous similar incidents involving its cultivator and knowledge of the efforts of Deere & Company to warn their users of the danger. *There was also some inference from the evidence that Wil–Rich acted indifferently to any need to warn of the potential for danger . . . .*
>
> *We think evidence of conduct both before and after the failure to warn can be relevant.* Although the earlier conduct of Wil–Rich would not alone support punitive damages, it may be appropriately considered by the jury in determining whether its conduct in failing to institute a warning program constituted willful and wanton disregard.

*Lovick v. Wil–Rich*, 588 N.W.2d 688, 700–01 (Iowa 1999) (emphasis added).

Likewise, here, the jury could reasonably infer that Walgreen acted indifferently to any need to warn Shari or her family of the side effects of Paxil once it learned of its mistake, knowing full well that such inaction could result in injury to her.

Viewing all of this evidence in the light most favorable to Shari, we are convinced there was sufficient evidence to submit the punitive-damage issue to the jury. The district court did not err in doing so.

**2. Jury instruction.** Walgreen objected to the district court's refusal to give its requested instruction on punitive damages. Instead of the requested instruction, the district court gave Iowa Uniform Civil Jury Instruction No. 210.1 (1988).

Walgreen contends the uniform jury instruction does not comport with the constitutional requirements for jury instructions on punitive damages set out in *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). In *Haslip,* the Court reviewed the constitutionality of a jury instruction on punitive damages in a fraud case and found that it did not violate the Due Process Clause of the Fourteenth Amendment. *Id.* at 19–20, 111 S.Ct. at 1044, 113 L.Ed.2d at 20–21. In so concluding, the Court said:

> By these instructions . . . the trial court expressly described for the jury the purpose of punitive damages, namely, "not to compensate the plaintiff for any injury" but "to punish the defendant" and "for the added purpose of protecting the public by [deterring] the defendant and others from doing such wrong in the future." . . .
>
> To be sure, the instructions gave the jury significant discretion in its determination of punitive damages. But that discretion was not unlimited. It was confined to deterrence and retribution, the state policy concerns sought to be advanced. And if punitive damages were to be awarded, the jury "must take into consideration the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong." . . . The instruction thus enlightened the jury as to the punitive damages' nature and purpose, identified the damages as punishment for civil wrongdoing of the kind involved, and explained that their imposition was not compulsory.

*Id.* at 19, 111 S.Ct. at 1044, 113 L.Ed.2d at 20–21.

For reasons that follow, we think the instruction the district court gave here sufficiently conveyed to the jury what it needed to know and did not violate the *Haslip* holding. First, the instruction explained that punitive damages are available only if "the plaintiff has proven by a preponderance of clear, convincing and satisfactory evidence the defendant's conduct constituted a willful and wanton disregard for the rights or safety of another and caused actual damage to the plaintiff."

Second, the instruction did not convey to the jury that it must award punitive damages, but rather informed the jury that such damages were simply within its *discretion.*

Third, the instruction stated that "punitive damages are *not intended to compensate* for injury but are allowed to *punish and discourage the defendant and others from like conduct* in the future." (Emphasis added.)

Fourth, the instruction informed the jury that there is no exact formula for calculating the amount of punitive damages, but explained that the jury could consider "the amount of punitive damages which [would] punish and discourage like conduct by the defendant in view of . . . its financial condition."

Fifth, the instruction told the jury that in fixing punitive damages, it could consider the "nature of defendant's conduct" and "plaintiff's actual damages." *Haslip* recognized the "plaintiff's actual damages" as an important constitutional factor with respect to punitive damages. *See BMW of North America, Inc. v. Gore,* 517 U.S. 559, 580–81, 116 S.Ct. 1589, 1601–02, 134 L.Ed.2d 809, 829–30 (1996) (citing *Haslip,* 499 U.S. at 23–24, 111 S.Ct. at 1046, 113 L.Ed.2d at 23).

In addition, separate instructions defined "willful and wanton conduct" and "preponderance of clear, convincing, and satisfactory evidence." While these definitions were not included in the punitive-damage instruction itself, the definitions are nevertheless read in conjunction with the instruction to determine the sufficiency of the instruction on the issue. *See Leaf v. Goodyear Tire & Rubber Co.,* 590 N.W.2d 525, 536 (Iowa 1999) ("Jury instructions are to be read and considered as a whole, not 'piecemeal or in artificial isolation.' ").

Clearly, the uniform civil jury instruction here "enlightened the jury as to the punitive damages' nature and purpose, identified the damages as punishment for civil wrongdoing of the kind involved, and explained that their imposition was not compulsory." *Haslip*, 499 U.S. at 19, 111 S.Ct. at 1044, 113 L.Ed.2d at 21; *see also State v. Morrison*, 368 N.W.2d 173, 175 (Iowa 1985) (holding that district court is not required to word jury instructions in any particular way so long as it correctly states the law). Walgreen has demonstrated no violation of the *Haslip* holding and therefore has demonstrated no constitutional or legal error. *State ex rel. Miller v. DeCoster*, 596 N.W.2d 898, 904 (Iowa 1999) (holding that we review constitutional challenges de novo); *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 316 (1998) (holding that we ordinarily review jury instruction challenges for correction of errors at law).

**3. Admission of financial information.** Shari introduced evidence of Walgreen's worldwide financial condition. Walgreen contends that the "Federal Constitution does not permit a jury in one jurisdiction to consider extraterritorial conduct of a corporate defendant when fashioning a punitive damage award." Walgreen attempts to extend this rule by arguing that the jury should have been allowed to consider Walgreen's financial worth only with respect to earnings, sales, revenue, and operations *occurring within the State of Iowa.* Walgreen contends the district court's refusal to give an instruction along these lines was unconstitutional.

In Iowa, "[e]vidence of a defendant's financial worth is one relevant factor for the jury to consider when setting a punitive damage award." *Lara v. Thomas*, 512 N.W.2d 777, 783 (Iowa 1994). Federal courts have recognized that, as a general matter, allowing this evidence on the question of punitive damages does not violate due process. *See, e.g., Continental Trend Resources, Inc. v. OXY USA, Inc.*, 44 F.3d 1465, 1475 (10th Cir.1995); *Robertson Oil Co. v. Phillips Petroleum Co.*, 14 F.3d 373, 380–81 (8th Cir.1993). Walgreen argues, however, that in awarding punitive damages for conduct occurring in Iowa, the jury may only consider the financial worth deriving from its business in Iowa.

In support of its argument, Walgreen relies on *Gore*. In that case, the Supreme Court held state sovereignty and comity mandated that, in fixing punitive damages, only the wrongful *conduct* that occurred within the state where the damages occurred could be considered in determining the amount of punitive damages. *Gore*, 517 U.S. at 572–73, 116 S.Ct. at 1597–98, 134 L.Ed.2d at 824–25. In other words, a jury may only award punitive damages to punish conduct occurring within the jurisdiction of a particular state and may not award such damages to punish or deter conduct that is lawful in other jurisdictions and which had no impact on the state or its citizens. *Id.*

Contrary to Walgreen's argument, however, *Gore* does not stand for the proposition that a jury may not consider nationwide or worldwide financial resources in awarding punitive damages for conduct that occurred solely within the borders of a particular state. Walgreen does not cite any other authority for its argument. Nor does it otherwise explain how permitting the jury to consider this type of evidence is unconstitutional. We conclude there was no constitutional violation in admitting the evidence.

**B. Evidentiary rulings.**

**1. Incident reports.** The district court permitted Shari to introduce, as a single exhibit, evidence of thirty-four incident reports involving claimed "error" with prescriptions filled by the Walgreen pharmacy on Ingersoll within a three-year period preceding the prescription error in dispute in this case. Walgreen contends the district court abused its discretion when it admitted the exhibit for two reasons. First, all but four of the thirty-four incident reports involved pharmacists other

than the defendant, Theresa Petersen. Second, each incident occurred under circumstances significantly different from those involved in this case.

Our review for admission of this type of evidence is for abuse of discretion. *Lovick,* 588 N.W.2d at 692.

Evidence of prior accidents may be admitted to show the existence of a dangerous condition. *Id.* at 692. Walgreen properly asserts, however, that a foundational showing must indicate the prior incidents occurred under substantially the same circumstances. *Id.* Nevertheless, we think Walgreen's arguments lack merit.

Shari was clearly trying to establish a pattern of conduct that showed that Walgreen knew of problems in getting prescriptions properly filled at the pharmacy on Ingersoll, yet did nothing to solve the problem. The challenged evidence was obviously relevant to the punitive-damage issue of willful and wanton conduct on the part of Walgreen. *See Cook v. State,* 431 N.W.2d 800, 803 (Iowa 1988) ("The probative value of previous accidents rests in the likelihood that the same conditions caused the accident under litigation."); *see also Harco Drugs, Inc. v. Holloway,* 669 So.2d 878, 881 (Ala.1995) (holding that 233 incident reports prepared by defendant's employees showing errors in filling prescriptions were relevant to show defendant-pharmacist's knowledge of problems within its pharmacies and therefore admissible on plaintiff's wantonness claim for punitive damages).

It is true that Petersen was not named in all of the incident reports. This fact, however, does not render the prior incident reports inadmissible. Shari had dropped her punitive-damage claim against Petersen. Shari's claims concerned only the Walgreen pharmacy on Ingersoll itself, and not the willful and wanton conduct of any one particular employee.

Shari clearly established proper foundation for admitting the incident reports. All the reports dealt with misfilling incidents that occurred at the Walgreen pharmacy on Ingersoll. *See Oberreuter v. Orion Indus., Inc.,* 398 N.W.2d 206, 211 (Iowa App.1986) (noting that "Iowa cases in which evidence of similar accidents was admissible involved accidents *at the same location* as plaintiffs' injury"). Moreover, most of the incidents occurred within a short, three-year period preceding the incident in question. *See Harco,* 669 So.2d at 881 (holding as relevant incident reports prepared by defendant's employees within three years of the error in filling plaintiff's prescriptions); *see also Lovick,* 588 N.W.2d at 697 n. 5 (noting that in negligence cases, evidence of prior incidents must not be too remote in time). Finally, many of the incident reports concerned dispensing errors whereby the name of incorrectly dispensed medication started with the same alphabetic character as the medication that was actually prescribed—the same *type* of incident that occurred here.

We conclude the district court did not abuse its discretion in admitting the incident reports.

**2. Matters pertaining to the licensee disciplinary proceedings.** Following the prescription error, the Iowa Board of Pharmacy Examiners initiated an investigation into the incident. *See* Iowa Code § 272C.3(a), (c), (d). On October 14, 1997, the board filed charges against Walgreen, alleging a variety of statutory violations in connection with the prescription error. *See* Iowa Code § 272C.3(e). On January 28, 1998, Walgreen submitted a written proposed stipulation and consent order. The proposed stipulation and consent order indicated it was offered to resolve the disputed claims and did not constitute any admission of wrongdoing. On February 3, 1998, the board formally accepted the stipulation and consent order in writing.

During trial, the district court admitted into evidence the formal statement of charges as well as the stipulation and con-

sent order. Walgreen contends here, as it did in the district court, that the statement of charges as well as the stipulation and consent order were not admissible. These documents were not admissible, Walgreen says, because (1) they were not relevant, and (2) any probative value was substantially outweighed by the danger of unfair prejudice and confusion of issues.

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 401. "The test is 'whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if [the person] knew of the proffered evidence.'" State v. Plaster, 424 N.W.2d 226, 229 (Iowa 1988) (quoting 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 401[07], at 401–48).

Not every ruling admitting irrelevant evidence requires reversal. See Shawhan v. Polk County, 420 N.W.2d 808, 810 (Iowa 1988). We reverse only if the erroneous ruling affects the substantial rights of the complaining party. Iowa R. Evid. 103(a) (providing that "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected"); Shawhan, 420 N.W.2d at 810. Although a presumption of prejudice arises when the district court has received irrelevant evidence over a proper objection, the presumption is not sufficient to require reversal if the record shows a lack of prejudice. See Shawhan, 420 N.W.2d at 810.

Even relevant evidence, however, is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice." Iowa R. Evid. 403. "Relevancy" is the tendency to make a consequential fact more or less probable; "probative value" gauges the strength and force of that tendency. Plaster, 424 N.W.2d at 231. "Unfair prejudice" is the

"'undue tendency to suggest decisions on an improper basis, commonly though not necessarily, an emotional one.'" Id. (quoting Fed.R.Evid. 403 advisory committee's note).

We reverse a ruling that the district court makes in the balancing process under rule 403 only if the district court has abused its discretion. Id. at 232. And the complaining party has the burden to establish that the district court abused its discretion in its ruling. Id.

With these principles in mind, we turn to the statement of charges and the stipulation and consent order. The statement of charges is in nine counts. Six of those counts "charged" Walgreen "under Iowa Code § 155A.15(2)(c) [and various administrative rules] with engaging in a practice harmful to the public by failing to prevent a medication dispensing error" on a particular date. One of those incidents concerned the one involved here.

One count "charged" Walgreen "under Iowa Code § 155A.15(2)(c) [and various administrative rules] with engaging in a practice harmful to the public by failing to prevent repeated unauthorized dispensing of a generic drug to a patient between 1990 and 1992."

One count "charged" Walgreen "under Iowa Code § 155A.15(2)(c) [and various administrative rules] with inadequate and/or deficient space and staffing for the prescription department, as observed during a routine pharmacy inspection conducted on April 24, 1995."

A final count "charged" Walgreen "under Iowa Code § 155A.15(2)(c) [and various administrative rules] with failure to ensure that all pharmacists at Walgreen Pharmacy # 1908 [Ingersoll] effectively utilized patient information; conducted prospective drug use review; and provided oral patient counseling; which resulted in or contributed to the medication dispensing errors contained in" the six counts involving medication dispensing error.

Iowa Code section 155A.15(2)(c) provides that the board of pharmacy examiners may impose a fine, issue a reprimand, or revoke, restrict, or cancel, or suspend a license, and may place a licensee on probation if the board finds that the licensee has

[v]iolated any provision of this chapter or any rule adopted under this chapter or that any owner or employee of the pharmacy has violated any provisions of this chapter or any rule adopted under this chapter.

In the stipulation and consent order, Walgreen and the board stipulated that the charges "shall be resolved without proceeding to hearing, as the parties have agreed to the following Stipulation and Consent Order.... [That] [t]his Stipulation and Consent Order is entered into in order to resolve a disputed claim and *constitutes no admission on the part of [Walgreen].*" (Emphasis added.)

In addition the parties agreed that (1) Walgreen's license be placed on probation for three years; (2) Walgreen pay a civil penalty of $2500; (3) Walgreen submit a plan documenting, resolving, and preventing medication dispensing errors; (4) Walgreen address the issues of adequate space and staffing; and (5) Walgreen submit to random unannounced visits or inspections by the board or its agents to verify compliance with the stipulation and order.

The statement of charges was irrelevant because it was merely assertions of wrongdoing. None of the matters in the statement of charges was either proved or disproved.

And nothing in the stipulation and consent order amounted to an *admission* of wrongdoing. The stipulation and consent order specifically states it was entered into to resolve a disputed claim and constitutes no admission on the part of Walgreen. The stipulation and consent order was therefore "motivated by a desire for peace rather than from a concession of the merits of the claim," and for that reason the document was irrelevant. 29 Am.Jur.2d

*Evidence* § 508, at 588–89 (1994) (explaining that one of the underlying principles excluding settlements and offers of settlement is that "the evidence is *irrelevant* as being motivated by a desire for peace rather than from a concession of the merits of the claim" (emphasis added)); *see Miller v. Component Homes, Inc.,* 356 N.W.2d 213, 215–16 (Iowa 1984); *see also Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1246–47 (3d Cir. 1993) (holding that evidence of five prior antitrust actions brought against the defendants was irrelevant on issue of defendants' motive to conspire and noting that "[s]imply because the defendants were named in past antitrust cases involving similar allegations does not make it more probable that the defendants had a motive to carry out their conspiracy"); *Kramas v. Security Gas & Oil, Inc.,* 672 F.2d 766, 767 (9th Cir.1982) (affirming exclusion of SEC consent decree in prior enforcement proceedings under Federal Rule of Evidence 403 in which "consent decree involved no finding of culpability and no judgment of wrongdoing and contained a recitation that it did not constitute evidence of wrongdoing in the enforcement proceeding"); *Beck v. Cantor, Fitzgerald & Co.,* 621 F.Supp. 1547, 1565, 1566 (N.D.Ill.1985) (holding that all evidence of SEC investigation, SEC opinion, and defendant's acquiescence in SEC opinion was inadmissible as irrelevant and immaterial), *overruled on other grounds by Pinter v. Dahl,* 486 U.S. 622, 644, 108 S.Ct. 2063, 2076–77, 100 L.Ed.2d 658, 688 (1988).

The consequential fact in the litigation here was whether Walgreen's conduct was willful and wanton. The likelihood that Walgreen's conduct was willful and wanton was not enhanced by a statement of charges that proved nothing and a stipulation and consent order that admitted nothing.

Because the statement of charges and the stipulation and consent order were irrelevant and therefore inadmissible, we do not reach the balancing question under

rule 403. However, we must still decide whether this evidence affected Walgreen's substantial rights. On this point, we note that there is nothing in the record to overcome the presumption that this inadmissible evidence affected Walgreen's substantial rights.

The tone of the charges conveys an atmosphere of criminality. That is not surprising since the matters charged carry a criminal penalty. *See* Iowa Code § 155A.22 (providing that any person who violates any of the provisions of "this chapter" commits a simple misdemeanor). They may also subject an offending party to a civil penalty of not to exceed $25,000. *See* Iowa Code § 155A.18. Given the nature, language, and tone of the statement of charges and the stipulation and consent order, the jury was likely to consider them as evidence of willful and wanton misconduct on the part of Walgreen. Obviously, this was the very reason for which the documents were introduced. However, as we have concluded, the documents were irrelevant on that issue. The district court accordingly erred in admitting the two documents.

The conclusion we reach on this issue requires a reversal of the judgment on punitive damages and a remand for a new trial on the punitive-damages issue only. Because the reversal renders moot Shari's cross-appeal, we do not address it.

## III. Disposition.

In sum, we conclude there was sufficient evidence to submit the punitive-damages issue to the jury. The district court therefore committed no error in submitting the issue. We affirm on this issue.

The instruction defining punitive damages was correct, and for that reason the district court did not err in refusing to give Walgreen's proposed jury instruction on punitive damages. We likewise affirm on this issue.

Evidence of Walgreen's worldwide financial condition and of the prior incidents was admissible, and for that reason the district court did not abuse its discretion in admitting both items of evidence. We also affirm on this issue.

The statement of charges and the stipulation and consent order were irrelevant and affected Walgreen's substantial rights. For this reason, we reverse and remand for a new trial on the issue of punitive damages only.

Although we have not addressed all of the issues raised and arguments made, we have carefully considered them. Those we have not addressed lack merit, were not preserved, or are moot.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except CADY, J., who dissents, and NEUMAN and TERNUS, JJ., who take no part.

CADY, Justice (dissenting).

I respectfully dissent.

I would conclude there was insufficient evidence to support the submission of punitive damages to the jury as a matter of law.

The legal standard for an award of punitive damages is clear, convincing, and satisfactory evidence of conduct constituting willful and wanton disregard for the rights or safety of another. Iowa Code section 668A.1 (1997). The majority concludes this standard was met through evidence concerning the error in filling the prescription, the prior reports of dispensing errors, and the failure to warn Shari or her doctors of the side effects of the drug, including the side effects of discontinuing the drug. I would conclude the evidence fell far short of our legal standard. It supports a finding of negligence, but not punitive damages.

Although there was evidence of thirty-four prior incident reports, there was no further evidence introduced at trial to evaluate the incident reports in the context of willful and wanton disregard for the

safety of another. Tort standards do not require perfection, and thirty-four incident reports over a three-year period may be entirely acceptable within the industry. Shari presented no evidence to interpret the meaning of the number of prior incident reports.

The main reason offered by the majority for submitting punitive damages, however, is the evidence that Walgreen failed to warn Shari of the dangers of the misfilled prescription after they learned a mistake had occurred. I agree the failure of a pharmacist to warn of the dangers of a misfilled prescription after acquiring knowledge of the mistake constitutes, by itself, egregious conduct. However, it is undisputed in this case that Shari was under the care of a physician at the time Walgreen learned of the mistake, and Walgreen knew the physician had undertaken a course of treatment for Shari in response to the mistake. This removes the conduct from the realm of punitive damages.

A health care practitioner has a duty to provide care that a reasonable health care practitioner would provide in the same circumstances. *See Wambold v. Brock,* 236 Iowa 758, 764, 19 N.W.2d 582, 585 (1945). Inherent in this basic principle, however, is that it would be reasonable for a health care practitioner to rely upon another health care practitioner to also conform to this standard. In other words, the duty of a pharmacist to a customer does not change the nature of the relationship between the customer and the treating physician. Thus, it was reasonable for Walgreen to assume the physician would pursue a reasonable course of treatment in response to its mistake and the failure to warn under these circumstances falls far short of the standard of willful and wanton disregard for Shari's safety. Walgreen knew Shari's safety was in the hands of a medical doctor. Its conduct in failing to warn Shari or the doctor, under these circumstances, does not show a lack of care with disregard for the consequences. *See Beeman v. Man-*

*ville Corp.,* 496 N.W.2d 247, 255 (Iowa 1993). Furthermore, Walgreen did not try to cover up its mistake. *See Tratchel v. Essex Group, Inc.,* 452 N.W.2d 171, 176 (Iowa 1990) (concealment supports punitive damages). This case is clearly distinguishable from the *Burke* case used by the majority to support its position.

A jury should not be permitted to consider punitive damages based on negligent conduct alone. This is true even if the conduct consists of multiple instances of negligence.