# IN THE COURT OF APPEALS OF IOWA

No. 20-0013
Filed December 16, 2020


**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NAJARI ALLEN,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.


Najari Allen appeals his criminal convictions and the imposition of consecutive sentences. **AFFIRMED.**


Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.


Considered by Tabor, P.J., Ahlers, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCOTT, Senior Judge.**

Najari Allen appeals his convictions on two counts of willful injury causing serious injury and one count of intimidation with a dangerous weapon and the imposition of consecutive sentences on the willful-injury charges. He claims the district court abused its discretion "in admitting into evidence photographs of [him] in the possession of a firearm" over his objections on relevancy and prejudice grounds. On the issue of sentencing, he claims, given his young "age and possible intellectual difficulties, concurrent sentences would have been more than [enough to] address [his] needs, rehabilitative and otherwise."

**I.      Background Facts and Proceedings**

In the early afternoon of June 10, 2019, Jesus Trujano-Garcia picked up Josiah Crana from Crana's grandmother's home. The pair picked up Allen from his mother's home shortly thereafter. The trio ultimately ended up at Crana's grandmother's house. Trujano-Garcia left around 7:30 or 8:00 p.m. and had no contact with Crana and Allen the remainder of the day.

Shortly after 10:00 p.m., two police officers of the Davenport Police Department had just finished responding to a call for service when they heard what they believed to be gunshots, approximately six in total. The officers raced to their cruisers, notified dispatch, and began searching the area. Thereafter, a 911 call was made from an address roughly three blocks away. The officers responded to the "chaotic" scene at the home of Tyona Baylor, where she lived with her children. Present at the home that evening were Baylor; her boyfriend; her sister, Shyonna Euring; some of Euring's acquaintances, Reesey Foster, Kash Lee, and Quatwan Moore; Baylor's children, including T.S.; and one of T.S.'s friends, S.L.

Baylor testified that at around 10:00 p.m., she was lying in bed when she heard what she thought were firecrackers. She got up, proceeded to the front room, then she "heard a few more." She told the children to get down then heard T.S. and S.L., who were outside, "screaming and banging on the front door." Baylor opened the front door, and T.S. and S.L. "were screaming that they got shot." Baylor took the girls to the hospital. S.L. was shot in the leg below her kneecap, and her leg was broken. T.S. was hit in the arm and had to undergo surgery to have the slug removed.

Euring testified she was outside with her four acquaintances and the two girls when the shooting occurred. She saw a car come by and heard someone say "get down," "and there was a whole bunch of gunshots." Euring observed "this dude hanging out the window, and he was just waving his gun around and shooting it everywhere." The shooter donned a dark gray hoodie and had "dreads." Euring identified the shooter as Allen. T.S. testified to her recollection she heard someone yell, "Get down," upon which she looked around and saw Allen "hanging out the passenger window in the back," "[h]e had a gun, and it was pointed out the window." T.S. recalled Allen shot at the group of people outside the home seven or eight times. Foster testified the vehicle containing the shooter "slow rolled" by the house prior to the shooting. It returned a short time later, and the shooting commenced. In her testimony, Foster identified Allen as the shooter.

After the shooting, Euring went to the hospital and showed the girls a photograph of Allen and another individual from Allen's social media account and questioned, "Do you recognize anybody in this photo?" S.L. testified that, at the time of the shooting, she did not know who the shooter was, but when she saw the

photograph, she was able to identify one of the individuals therein, Allen, as the shooter. T.S. confirmed in her testimony the person in the photograph was the shooter, Allen. Detective Gregory Lalla interviewed T.S. and S.L., during which the girls identified the shooter as the man in the picture shown to them by Euring. Detective Lalla knew the individual in the photograph to be Allen. According to Foster, after the shooting, she observed a portion of a video call from Allen and Crana, and Foster observed on the call that Allen and Crana were waving guns and one of them stated, "Come outside. Why are you guys hiding? We are going to catch you again." Days after the shooting, Allen reported to the police station for an interview. He generally denied any involvement in the shooting. Allen was arrested shortly after his interview.

On June 21, Allen called his girlfriend from jail; the call was recorded. Allen questioned, "Did you see there were shoes"—a slang term for guns—"in them pictures, in my photos?" On or about June 25, Allen's cell phone was received by law enforcement from Allen's girlfriend. One message retrieved from the phone that was sent therefrom roughly forty-five minutes before the shooting advised, "About to get these[] shoes." Another call was made by Allen from jail on July 2. During that call, his girlfriend advised the detective would not return Allen's phone to her "cause he found some shit, pictures with shoes and videos with it." Allen responded, "I thought I told you to delete them shoes." On Allen's phone, Detective Lalla discovered two photographs of Allen holding handguns, both of which were taken on June 13, three days after the shooting.

Allen was formally charged by trial information with two counts of willful injury causing serious injury and one count of intimidation with a dangerous

weapon. Prior to trial, Allen filed a motion in limine requesting the court not allow the State to present photographs of him holding or displaying a gun. The matter was discussed outside of the presence of the jury during trial. The State intended to admit the two photographs of Allen holding a firearm. The court admitted the photos, concluding they were relevant. Ultimately, a jury found Allen guilty as charged. The court ordered that the indeterminate prison terms imposed on the willful-injury convictions be served consecutively, basing its decision on the fact that there were two shooting victims, Allen's lack of remorse, and the need for deterrence in the community. Allen appeals.

## II.     Standard of Review

We review district court rulings on relevance of evidence for an abuse of discretion, our most deferential standard of review. *State v. Tipton*, 897 N.W.2d 653, 691 (Iowa 2017); *see State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017). An abuse of discretion occurs when the court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Tipton*, 897 N.W.2d at 691. "Reversal is only warranted when 'a substantial right of the party is affected.'" *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 612 (Iowa 2000) (quoting *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000)). If the record shows a lack of prejudice on a particular ruling, reversal is inappropriate. *See id.* We likewise review sentencing decisions within statutory limits for discretionary abuse. *State v. Gordon*, 921 N.W.2d 19, 24 (Iowa 2018).

### III.    Analysis

    A.    Admission of Evidence

Allen challenges the admission of the photographs depicting him holding a firearm on relevance and prejudice grounds.  As to relevance, Allen points out the photos were taken days after the shooting, the State did not prove the handguns in the pictures were used in the shooting, and they were not recovered.  Relevant evidence is generally admissible.  Iowa R. Evid. 5.402.  Evidence is relevant if (1) "[i]t has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "[t]he fact is of consequence in determining the action."  Iowa R. Evid. 5.401.  The photographs were at least minimally relevant to show Allen had access to guns and could have committed the shooting.  We find no abuse of discretion in the court's decision overruling Allen's relevance objection.

As to prejudice, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Iowa R. Evid. 5.403.  "Because the weighing of probative value against probable prejudice is not an exact science, we give a great deal of leeway to the trial judge who must make the judgment call."  *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006).  Allen claims the photographs' probative value was minimal because he was identified by four eyewitnesses and they were prejudicial because they "were of a threatening nature and provocative in composition" and "worked to arouse the juror[s'] emotions and unfairly prejudice" him.  Upon our review, and giving the district court a great deal of leeway, even though the probative value of the evidence might have been outweighed by the danger of unfair prejudice, we are unable to conclude it was substantially so.  *See* Iowa R. Evid. 5.403.  In any event,

evidentiary rulings only require reversal "if the error affects a substantial right of the party." Iowa R. Evid. 5.103(a).

> To determine whether a substantial right of a party has been affected when a nonconstitutional error occurs, we employ harmless error analysis and ask: "'Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that [the complaining party] has suffered a miscarriage of justice?'"

*State v. Paredes*, 775 N.W.2d 554, 571 (Iowa 2009) (quoting *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004)). Upon our review of the evidence presented, we answer that question in the negative. While Allen attempted to mount an alibi defense, the State provided a mountain of evidence rebuffing that theory and unquestionably identifying Allen as the shooter. We affirm the admission of the challenged evidence.

### B. Sentencing

Allen contends the court abused its discretion in imposing consecutive sentences on his willful-injury convictions. He claims given his "age and possible intellectual difficulties, concurrent sentences would have been more than [enough to] address [his] needs, rehabilitative and otherwise." But the court is not required to specifically acknowledge each claim of mitigation, *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995), and we find the court's statement of reasoning for imposing consecutive sentences "sufficient to demonstrate the exercise of discretion and indicates those concerns which motivated the court to select the particular sentence which it imposed." *State v. Garrow*, 480 N.W.2d 256, 259 (Iowa 1992). We find no abuse of discretion in the court's sentencing decision and affirm the imposition of consecutive sentences.

**IV.  Conclusion**

We affirm Allen's convictions and the imposition of consecutive sentences.

**AFFIRMED.**