# IN THE COURT OF APPEALS OF IOWA

No. 19-1821
Filed February 17, 2021

**SHANNON LEE DUNCAN,**
        Plaintiff-Appellant,

**vs.**

**FORD MOTOR CREDIT COMPANY, LLC, BRUCE SHORES, and REPOSSESSORS, INC,**
        Defendants-Appellees.
_____

Appeal from the Iowa District Court for Winneshiek County, Richard D. Stochl, Judge.

A car buyer appeals a summary judgment barring her from seeking punitive damages in her action for civil extortion against the creditor and repossessor. **REVERSED AND REMANDED.**

Dennis G. Larson of Larson Law Office, Decorah, and Jeremy Thompson, Decorah, for appellant.

Angela E. Dralle of Dorsey & Whitney LLP, Des Moines, for appellee Ford Motor Credit Co.

Jace T. Bisgard and Teresa K. Baumann of Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellees Repossessors, Inc. and Bruce Shores.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Shannon Duncan's civil-extortion action filed in 2015 has yet to go to trial. This appeal marks the second time Duncan has challenged the grant of summary judgment for her lender and its agents. In the first appeal we reversed the district court's mistaken application of a two-year statute of limitations. *See Duncan v. Ford Motor Credit*, No. 17-1122, 2018 WL 3060265, at *3–4 (Iowa Ct. App. June 20, 2018). Now Duncan contests the court's exclusion of her claim for punitive damages. Because a jury could find the defendants engaged in intentional acts of an unreasonable character, we reverse the partial summary judgment and remand for further proceedings.

## I.      Facts and Prior Proceedings

Duncan bought a new Ford Edge in 2008 from the Decorah Auto Center. She financed the vehicle through Ford Motor Credit Company (Ford) and made installment payments through the summer of 2010. That fall, she received a notice from Ford that she owed $1871 by November 19. Duncan asserts she timely paid that amount. Still, on the due date, Bruce Shores of Repossessors, Inc.[1] showed up at her workplace and took possession of the Edge.

Duncan, through her attorney, demanded Ford and Shores return the vehicle. They did not. In February 2011, Ford sent a letter to Duncan's attorney, suggesting they would not return the vehicle unless Duncan signed a release absolving them of liability for any wrongdoing. In a letter sent March 8, Duncan's attorney rejected that idea. Two weeks later, Ford responded, "Arrangements

---

[1] We will use the name Shores to refer collectively to him and his employer.

have been made for a waiver of the requirement that Ms. Duncan or an authorized representative sign a release when the vehicle is redelivered." Meanwhile, Duncan paid the loan's remaining balance of $22,196.

But not until June 2011 did Ford and Shores reveal the location of the Edge. When Duncan traveled to Minnesota to retrieve the vehicle, Shores told her personally that she would have to execute a liability release before he would turn over the keys. Eventually, she recovered the vehicle without signing a release. It was then that she discovered personal property missing from the vehicle. Plus, the Edge was damaged, according to Duncan, and she incurred expenses in repairing it.

More than four years later, in December 2015, Duncan sued Ford and Shores, claiming conversion and civil extortion. The defendants filed motions for partial summary judgment, alleging the statute of limitations barred Duncan's claims.[2] The district court found Duncan's extortion action arose in June 2011, when she recovered her vehicle. So her petition, filed four and a half years later, was outside the two-year statute of limitations in Iowa Code section 614.1(2) (2015). The court granted the defendants' motion for summary judgment on the civil extortion claim.

In the first appeal, we affirmed the dismissal of the conversion count but reversed and remanded on the extortion claim. *See Duncan*, 2018 WL 3060265, at *4. We held "the district court improperly granted summary judgment on the

---

[2] The district court found the conversion occurred on November 19, 2010, when Shores took the vehicle from Duncan. So the five-year statute of limitations under Iowa Code section 614.1(4) ran on November 19, 2015, the month before Duncan sued. The court granted partial summary judgment on the conversion claim.

issue of civil extortion on the ground the claim was barred by the statute of limitations." *Id.* (holding five-year statute of limitations in section 614.1(4) should apply). We also found the court properly concluded "Duncan's petition adequately raised a claim of civil extortion." *Id.*[3]

Once the case returned to the district court, Ford again moved for summary judgment on the civil extortion claim alleging no genuine issue of material fact existed. Shores joined the motion. Before Duncan filed her resistance, Ford moved for partial summary judgment on her claim for punitive damages. Shores again joined. In early September 2019, the court denied the motion for summary judgment on the civil extortion claim. The court read our earlier decision as precluding the grant of summary judgment:

> Defendants' current motion essentially asks this court to reconsider the prior finding that the claim of civil extortion has been properly brought by Duncan. She alleges defendants committed civil extortion when they demanded a release of liability in exchange for the return of her car. Based on the prior findings of the court of appeals this court finds whether the demand for a release constitutes extortion under Iowa law is a fact issue for the jury to determine.

Ford moved to reconsider that ruling and requested a separate ruling on its motion for partial summary judgment on punitive damages. The court granted the defendants' motion on punitive damages but reaffirmed its denial of summary judgment on the extortion claim.

Meanwhile, Duncan asked to "vacate" the partial summary judgment on punitive damages. The court treated the request as a motion to reconsider under

---

[3] We reached this issue in response to an argument from appellees Ford and Shores that the district court's dismissal of the civil extortion claim could be affirmed on the separate basis that it failed as a matter of law.

Iowa Rule of Civil Procedure 1.904(2) and denied it. Duncan challenged these rulings by applying for interlocutory appeal to the Iowa Supreme Court. Ford responded by filing an "application for interlocutory cross appeal." As was his practice, Shores joined Ford's application. They urged

> it is important for this Court to grant [our] Application for Interlocutory Cross-Appeal and that the Order denying summary judgment on Duncan's civil extortion claim be reviewed at this time. The District Court's misinterpretation of the prior Court of Appeals decision in this case must be corrected in order to protect [our] substantial rights, to avoid the additional appealable decisions that will likely result therefrom that will materially affect the final decision in this matter, and to better serve the interests of justice.

Noting their application was filed more than thirty days after the ruling denying summary judgment on the extortion claim, the supreme court asked Ford and Shores for jurisdictional statements explaining whether their request for review was timely. In those statements, they argued their application for interlocutory cross-appeal complied with the appellate rule because it was filed within ten days of Duncan's application. *See* Iowa R. App. P. 6.101(2)(b) (providing that any notice of cross-appeal must be filed within the thirty-day limit for filing a notice of appeal, or within ten days after the filing of a notice of appeal, whichever is later). But because the defendants were seeking review of a different district court order, the supreme court dismissed their application as untimely.

Turning to Duncan's application, the supreme court granted interlocutory appeal to consider the grant of summary judgment on the punitive damages claim. After the parties completed their briefing, the court transferred the case to us.

## II. Scope and Standard of Review

We review the grant of summary judgment for correction of errors at law. *Breese v. City of Burlington*, 945 N.W.2d 12, 17 (Iowa 2020). In doing so, we view the record in the light most favorable to Duncan, as the nonmoving party. *See id.* If the record reveals no genuine issue as to any material fact, and Ford and Shores are entitled to judgment as a matter of law, summary judgment is proper. *See id.*

## III. Analysis

Borrowing from our earlier decision, we set out the elements of civil extortion. Under Iowa Code section 711.4(1), Duncan must prove:

> (1) one or more of the defendants, with the purpose of obtaining for themselves or another, anything of value, threatened to wrongfully injure the property of another; (2) the threat was communicated to and directed toward plaintiff; (3) the defendants' actions were the proximate cause of plaintiff's damages; and (4) the amount of damages.

*Duncan*, 2018 WL 3060265, at *3–4 (citing *Becker v. Longinaker*, No. 09-0833, 2010 WL 1578400, at *9 (Iowa Ct. App. Apr. 21, 2010)).

On top of actual damages, Duncan seeks punitive damages, alleging Ford and Shores acted with "malice and disregard to [her] lawful rights." *See Becker*, 2010 WL 1578400, at *11 (upholding jury's award of punitive damages in a civil extortion action). On that claim, Duncan must prove by a preponderance of clear, convincing, and satisfactory evidence that the defendants acted with "willful and wanton disregard" for her rights. *See* Iowa Code § 668A.1. In the context of punitive damages, the phrase "willful and wanton" means "[t]he actor has intentionally done an act of unreasonable character in disregard of a known or

obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." *McClure v. Walgreen Co.*, 613 N.W.2d 225, 230 (Iowa 2000) (quoting *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990)).

True to their name, punitive damages serve to punish and "to deter others from conduct which is sufficiently egregious to call for the remedy." *Id.* at 230–31. The remedy is appropriate only if Duncan can show "actual or legal malice."[4] *Id.* Framed in other words, Duncan must do more than show the defendants' conduct was "objectionable." *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 156 (Iowa 1993). She may receive punitive damages if she can offer evidence that the defendants engaged in a "persistent course of conduct" with no care for the consequences of their actions. *Id.*

Rejecting that course-of-conduct scenario, Ford and Shores argue that the only act at issue is their refusal to return Duncan's vehicle without a signed liability release. They contend the record contains no evidence they acted with malice or with willful and wanton disregard for her rights when requesting a release from liability. They claim they did not pressure her to sign a release. And they stress that the communication requesting a release went through her lawyer:

> [Ford's] requests for a release made *to Duncan's lawyer* were not unreasonable, nor was it highly probable that harm would be caused to Duncan *by a request made to her attorney.* Rather, as the district court correctly held, [Ford's] conduct in requesting a release of liability was "standard" and "typical in a situation where the parties are trying to resolve a disputed matter," and it was "not an act of such

---

[4] Actual malice embraces factors such "as personal spite, hatred, or ill will." *McClure*, 613 N.W.2d at 231. Legal malice arises from "wrongful conduct committed or continued with a willful or reckless disregard for another's rights." *Id.*

'unreasonable character' that will constitute malice or a willful and wanton disregard of someone's rights."

For this last point, both Ford and the district court rely on *Iowa Supreme Court Attorney Disciplinary Board v. Stowers*, 823 N.W.2d 1 (Iowa 2012). Their reliance is misplaced. Ford quotes *Stowers* as saying "typical settlement demands and litigation threats" fall outside "the ambit of the extortion statute." *Stowers*, 823 N.W.2d at 12. But that passage concerns the *statutory defense* for extortion available if the person making the threats "reasonably believed that [he] had a right to make such threats in order to recover property, or to receive compensation for property or services, or to recover a debt to which the person has a good faith claim." Iowa Code § 711.4(3). Neither Ford nor Shores invoke the statutory defense. Instead, they contend that contacting Duncan through her counsel transformed what she alleges to be their wrongful conduct into standard litigation practice.

We reject that contention. Communicating an extortionate threat through a third party, even if that third party is an attorney, does not instantly scrub away all malicious intent. No doubt, Ford and Shores expected Duncan's attorney to pass on their demand for a liability waiver to his client. *See State v. Brownlee*, 51 N.W. 25, 27 (Iowa 1892) (acknowledging "threat" element of extortion could be met through third-party communication if the actor intended the victim receive the threat); *see also Calamia v. State*, 125 So. 3d 1007, 1012 (Fla. 5th Dist. App. 2013) (interpreting extortion statute to allow communication through a third party with intent that the communication reach the person being compelled); *Writer's Workshop, Inc. v. Elwell*, FSTCV156026560S, 2017 WL 6888849, at *23 (Conn.

Super. Dec. 7, 2017) (holding it was immaterial to extortion claim that threats were not communicated directly to victim if it was intended that threats were to be communicated to her and they were so communicated by her husband and his attorney).  Because a third-party communication may still constitute a "threat," using the attorney as an intermediary did not remove their conduct from the realm of civil extortion.  Nor did it automatically erase its "unreasonable character" or their alleged "disregard of a known or obvious risk" of harm to Duncan's rights.  At best, the fact that they demanded the liability waiver in a letter to Duncan's counsel created a factual basis for the defendants to argue to the jury that their acts did not amount to extortion or warrant punitive damages.  *See State v. Crone*, 545 N.W.2d 267, 271 (Iowa 1996) (noting standard for determining threat element of extortion is whether the threat was "definite and understandable by a reasonable person of ordinary intelligence").

Having rejected the notion that communicating through Duncan's attorney inoculated Ford and Shores from a finding of malice or intentional disregard, we circle back to address their restrictive view of the record.  They claim:

> [T]he only conduct that can be examined . . . to determine whether [defendants] acted in a manner that was willful, wanton and in disregard of a known or obvious risk are the few instances wherein [defendants] discussed the release of liability with Duncan's attorney, *not* the other alleged wrongdoings that the release could have potentially covered.

Ford and Shores assert that we must ignore Duncan's allegations of other "bad acts."  For instance, they argue we cannot consider any threat Shores allegedly made to "call the police" and have Duncan arrested when he originally repossessed the Edge from her workplace.  Duncan replies that the breadth of the

defendants' proposed liability release "certainly covered" Shores's threat to call the police and other facts alleged in her briefing.

In assessing the grant of summary judgment, we must view the undisputed facts in the light most favorable to Duncan, as the nonmoving party. *See Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). On her behalf, we indulge "every legitimate inference that can be reasonably deduced from the record." *Id.* The defendants' insistence that we limit our review to a narrow swath of facts undercuts that scope of review.

Hence we decline to cabin our review to the release discussion. Instead, we look to the facts supporting all elements of the underlying tort of civil extortion. *See Duncan*, 2018 WL 3060265, at *3 (citing *Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 424 (Iowa 1977), for proposition that criminal offense may give rise to civil cause of action); *see also Zohn v. Menard, Inc.*, 598 N.W.2d 323, 331 (Iowa Ct. App. 1999) (reversing dismissal of civil extortion claims by suspected shoplifters who signed waiver-of-rights form absolving store from civil liability in return for restitution agreements); *Engineered Seal Prods., Inc. v. ASA Oil Seal Co.*, 19-CV-103-CJW-KEM, 2020 WL 4352793, at *5 (N.D. Iowa Jan. 30, 2020) (holding defendant's refusal to return tools unless plaintiff agreed to modified contract terms constituted a threat to withhold and injure plaintiff's tools).

As noted in the first appeal, Duncan's cause of action for civil extortion alleged that the defendants "continued their conversion of [her vehicle] and personal property upon their requirement that she execute a release of liability against them." *Duncan*, 2018 WL 3060265, at *3. That articulation of "continued"

wrongdoing allows us to examine the defendants' course of conduct.[5] Duncan must prove that the defendants made a threat under Iowa Code section 711.4. Our criminal case law defines "an extortionate threat [as] a promise of punishment, of reprisal, or of other distress." *State v. Gant*, 597 N.W.2d 501, 504–05 (Iowa 1999) (requiring threat to be "definite and understandable to a reasonable person of ordinary intelligence"). The circumstances surrounding the original repossession of the vehicle provide necessary context for Duncan's claim of a later threat.

More to the point, Duncan is entitled to punitive damages if she can show the defendants engaged in "a persistent course of conduct" revealing their lack of care for her rights and a disregard for consequences. That course of conduct started with the repossession of her vehicle. The details of that encounter are relevant to show the "unreasonable character" of their acts. Through her affidavit and other exhibits in the summary judgment record, Duncan has generated a jury question whether the defendants acted with malice or willful disregard of her rights.

Viewing the record in the light most favorable to Duncan, we find a genuine issue of material fact exists on the question of punitive damages. We reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[5] Ford and Shores argue that any threats made during the repossession are not relevant because they are barred by the five-year statute of limitations. We disagree. When the cause of action reflects the cumulative impact of ongoing conduct, "it makes no difference that some of the component acts fall outside the period of limitations." *Cf. Farmland Foods, Inc. v. Dubuque Hum. Rts. Commn.*, 672 N.W.2d 733, 741 (Iowa 2003) (discussing claim of hostile work environment).